Tonsic et vir, Appellants, *v.* Wagner.

Argued September 25, 1973. Before JONES, C. J., EAGEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel M. Berger,* with him *Berger and Kapetan,* for appellants.

*Wilbur McCoy Otto,* with him *Michael W. Burns, Herbert Bennett Conner,* and *Dickie, McCamey & Chilcote,* for appellee.

OPINION BY MR. JUSTICE MANDERINO, December 6, 1974:

Appellants, Kathryn M. Tonsic and her husband, James J. Tonsic, filed a negligence action against the appellee, Pittsburgh Hospital Association, and against Dr. J. Huber Wagner, claiming damages for injuries sustained by the appellant wife during an operation in the appellee's hospital. A jury returned a verdict of $37,000 against Dr. Wagner, but found in favor of the appellee hospital. Appellants moved for a new trial on their claim against the appellee hospital. The motion was denied, and on appeal the Superior Court affirmed. *Tonsic v. Wagner and Pittsburgh Hospital Association,* 220 Pa. Superior Ct. 468, 289 A.2d 138 (1972) (Judge HOFFMAN filed a dissenting opinion). We granted appellant's petition for allowance of appeal limited to the issue of whether the hospital and the operating surgeon can both be held liable for the negligence of hospital personnel during an operation.

The dissenting opinion of Judge HOFFMAN in the Superior Court provides the following accurate summary of the case:

"The jury verdicts followed a trial in which appellants claimed that both the Pittsburgh Hospital and Dr. Wagner were liable for damages resulting from the

failure to remove a Kelly clamp from appellant wife's abdomen at the conclusion of a colectomy operation. Wife appellant had been admitted to appellee hospital for the performance of the surgery. A part of the hospital's charge for services was for the use of the operating room. The operation was performed by Dr. Wagner who was assisted by nurses and an intern, who were employees of appellee hospital, and by another surgeon, Dr. Weitzel, Dr. Wagner's associate.

"In the course of the operation a number of instruments were used. These instruments, including the Kelly clamp, were the property of the hospital. The instruments were handed to Dr. Wagner by the scrub nurse who stood by his side and were then returned by the doctor to this nurse. Neither the scrub nurse, nor the circulating nurse, nor the intern, nor the hospital itself counted the instruments or in any other way kept track of the instruments to determine if any had been allowed to remain in appellant's abdomen. Neither of the nurses nor the intern called Dr. Wagner's attention to the fact that a clamp was still in appellant's abdomen, nor did any of them take any action to remove the clamp.

"At the conclusion of the testimony the trial judge, despite appellants' counsel's specific request, refused to permit the jury to determine whether appellee-hospital was vicariously liable for the negligence of its nurses and intern in failing to remove the clamp or cause it to be removed prior to the incision being closed with sutures. Rather the Court held that the doctor, as 'captain of the ship', had exclusive control over the persons in the operating room and was therefore solely liable for any negligence committed there. . . ."

In its charge, the trial court, at several points, instructed the jury that the hospital could not be liable for the negligence of hospital employees during the operation. One such reference was as follows:

250

"[W]hen a surgical operation is being performed in a hospital by a private surgeon . . . who is not an employee of the hospital itself, and the hospital furnishes . . . certain employees for his assistance in performing the operating, those servants, such as nurses, interns, and the like, become for the time being, for the duration of the operation, the servants of the surgeon in charge subject to his control as to any acts relating to the operation. And he is responsible and legally liable for any wrongful acts or negligent acts that they perform *to the exclusion of the hospital,* although the hospital is in general the employer of the nurses or the interns. (Emphasis added.)

. . . .

"[The operating surgeon] is responsible for the negligence of any other person in the operating room during the operation because he is the 'captain of the ship.' " (Emphasis added.)

At the conclusion of the charge, the appellants' counsel made the following objection: "I want to except to the Court's charge as follows: The Court should have charged that the conduct of the nurses and intern can make the Hospital vicariously liable under the doctrine of respondeat superior, to the Court's statement that in the operating room the doctor is in complete control of the hospital employees to the exclusion of the hospital; and I would like the Court to have charged that the Hospital has an affirmative duty to treat patients, to make patients well, and that the nurses and the intern in the operating room, although subject to the control of the doctor, can also be servants of the Hospital; and *that would have to be up to the jury to determine whether the nurses and the intern during the operation were the servants of the Hospital and the doctor both.*

"I also except to the failure of the Court to charge the jury that the nurses and the intern, who could have been found to be subject to the control of the Hospital

as servants, knew or should have known of the presence of the clamp and failed to remove the clamp. This is a matter to be determined by the jury." (Emphasis added.)

The issue before us is whether the trial court erred in ruling as a matter of law that the appellee hospital could not be liable for the negligence of its personnel during an operation. Prior to our decision in *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965), we had no occasion to consider that issue. Suits against hospitals qualifying as charities failed because such hospitals were not liable, vicariously or otherwise. *See Benedict v. Bondi,* 384 Pa. 574, 122 A.2d 209 (1956) ; *Yorston v. Pennell,* 397 Pa. 28, 153 A.2d 255 (1959). Since *Flagiello* abolished the doctrine of charitable immunity, the issue before us is no longer academic.

The trial court's charge erroneously extended the application of the captain of the ship analogy first used in *McConnell v. Williams,* 361 Pa. 355, 65 A.2d 243 (1949). *McConnell,* in holding that a doctor in the operating room could be vicariously liable for the negligence of others during the operation, did not hold or say that the operating surgeon, as captain, was the only one who could be held legally responsible for the negligence of other persons in the operating room. Indeed, *McConnell,* specifically recognized a contrary "firmly established" principle of agency. *McConnell* noted that: "A person may be the servant of two masters, not joint employers, at one time as to one act, provided that the service to one does not involve abandonment of the service to the other. Rest. Agency, §226. Such is the case where an employee is transferred to carry on work which is of mutual interest to both of two employers and to effect their common purpose. *Siidekum, Administrator, v. Animal Rescue League of Pittsburgh,* 353 Pa. 408, 414, 45 A.2d 59, 62;

*Kissell v. Motor Age Transit Lines, Inc.,* 357 Pa. 204, 209, 53 A.2d 593, 596." *Id.* at 360, 65 A.2d at 245.

Moreover, *McConnell,* in discussing the negligence of the intern employed by the hospital, noted that "even if in the performance of that act [the intern] may also have been serving the hospital, that fact would not change his legal status with respect to [the operating surgeon], since a borrowed employee may, *in the performance of a given act, be serving the interests of both his general employer and his temporary master.* (Emphasis added.) The Comment to Section 226 of the Restatement (Second) of Agency, the section noted in *McConnell,* says: [a] single act may be done to effect the purposes of two independent employers. Since, however, the relation of master and servant is dependent upon the right of the master to control the conduct of the servant in the performance of the service, giving service to two masters at the same time normally involves a breach of duty by the servant to one or both of them. A person, however, may cause both employers to be responsible for an act which is a breach of duty to one or both of them. *He may be the servant of two masters, not joint employers as to the same act, if the act is within the scope of his employment for both;* he cannot be a servant of two masters in doing an act as to which an intent to serve one necessarily excludes an intent to serve the other." (Emphasis added.)

*See also* Restatement (Second) of Agency, §227 (1957). This rule of agency was applied in *Kissell v. Motor Age Transit Lines,* 357 Pa. 204, 53 A.2d 593 (1947), also cited in *McConnell.* In holding that a jury properly found that two defendants were vicariously liable for the negligence of a driver operating a tractor owned by one defendant which was pulling a trailer owned by the other defendant, *Kissell* said: " 'Where . . . it is not entirely clear who was the controlling master of the borrowed employe, and different

inferences in that regard can fairly be drawn from the evidence, it is for the jury, not the court, to determine the question of agency': Dunmire v. Fitzgerald, 349 Pa. 511, 516, 37 A.2d 596. '. . . under some circumstances both the lender and the borrower may have control over the servant so as to render each of them liable for his conduct, for he may have been transferred to carry on work which is of mutual interest to them and to effect their common purpose, so that his service to the one does not involve abandonment of his service to the other': Siidekum v. Animal Rescue League of Pittsburgh, 353 Pa. 408, 414, 45 A.2d 59, 62. Whether the power of control was sole or joint was to be determined by the jury and the finding of joint control is amply sustained by the evidence." *Id.* at 209, 53 A.2d at 595-96.

We are thus unable to read *McConnell's* use of the captain of the ship analogy as intending that only the operating surgeon can be liable for the negligence of hospital employees during an operation. *McConnell* was not concerned with the hospital's liability. Moreover, subsequent cases have continued to note that a person "may be at the same time the agent both of [an operating surgeon] and of a hospital even though the employment is not joint." *Yorston v. Pennell*, 397 Pa. 28, 39, 153 A.2d 255 (1959) ; *Rockwell v. Kaplan*, 404 Pa. 574, 579-80, 173 A.2d 54, 57 (1961). *See also* Section 251 of the Restatement (Second) of Agency.

We conclude that agency law principles applicable to others should also apply to hospitals and operating surgeons. Hospitals, as well as the operating surgeons, owe a duty to the patient. If that duty is breached under circumstances from which a jury could reasonably conclude that the negligent party was at the same time the servant of two masters, both masters may be liable. The trial court thus erred in charging that, as a matter of law, only the operating surgeon could be

liable for the negligence of hospital personnel during an operation. The evidence presented raised issues of fact which should have been submitted to the jury with proper instructions. A new trial against the appellee hospital must therefore be granted.

Appellants also request that we limit the new trial solely to the issue of liability and allow the amount of the verdict to remain undisturbed. We agree that the appellants are entitled to that relief. Appellants, having secured a verdict against one of two alleged tortfeasors, should not be denied their verdict because a new trial is granted as to the other alleged tortfeasor. *McArthur v. Balas*, 402 Pa. 116, 166 A.2d 640 (1961); *Soltan v. Shahboz*, 383 Pa. 485, 119 A.2d 242 (1956); *Ratcliff v. Myers*, 382 Pa. 196, 113 A.2d 558 (1955); *Trerotola v. Philadelphia*, 346 Pa. 222, 29 A.2d 788 (1943).

The order of the trial court denying appellants' motion for a new trial as to the appellee, Pittsburgh Hospital Association, and the order of the Superior Court affirming the trial court's order are reversed. A new trial, limited to the issue of appellee's liability to the appellants, is granted.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

While I agree in general with the legal principles set forth in the Court's opinion, including the applicability of §226 of the Restatement (Second) of Agency, I must dissent from its conclusion that a new trial of the claim against the hospital must be had.[1]

———

[1] I also have grave doubt as to the propriety of the mandate contained in the opinion of the Court, which limits the scope of the new trial to the issue of liability. The result of this limitation, if liability is found as to the hospital, is to foist upon it the dollar

The negligence charged to the Hospital in the plaintiffs' complaint was of three sorts: the employment of unqualified, untrained and careless personnel for work in the operating room; the failure to set up adequate safeguards and precautions to prevent the leaving of clamps in a patient's body; and the failure of the hospital employees in attendance to inspect the situs of the operation and make certain that no clamps or other foreign objects were left in the patient's body. No evidence was introduced to show the Hospital's neglect in these areas, except that it had in force no rule or policy as to clamp counts, and that its intern and two

amount of the verdict which another jury found in favor of the plaintiffs against another defendant. It is true, of course, as the Court states, that the plaintiffs "should not be denied their verdict [against Dr. Wagner] because a new trial is granted as to the other alleged tortfeasor". The verdict against Dr. Wagner, who has not appealed, remains intact, and our cases have uniformly so held. See, e.g., *Soltan v. Shahboz*, 383 Pa. 485, 493, 119 A.2d 242 (1956). Cf. *Frank v. W. S. Losier & Co. Inc.*, 361 Pa. 272, 278, 64 A.2d 829 (1949). But it is quite another thing to say that a defendant who has been *exonerated* by one jury in an earlier trial must, if found liable on a new trial, be "stuck" with a verdict that jury has returned against another defendant. My limited research has disclosed only one case in which our Court has sanctioned such a procedure. *Ratcliff v. Myers*, 382 Pa. 196, 113 A.2d 558 (1955). In that case Mr. Justice (later Chief Justice) Charles Alvin JONES, joined by Mr. Justice CHIDSEY, dissented, asserting that this procedure was a deprivation of property without due process of law with respect to the defendant faced with the new trial. 382 Pa. at 206. If the verdict in the present case against the doctor had been deemed by the plaintiffs to have been on the low side, they would be the first to assert that a new trial as to a co-defendant should be plenary. (It is to be noted that prior to trial the claim against Dr. Wagner had been settled for $14,000, and a joint tortfeasor release taken; the aggregate verdict was $37,500.) As it was, appellants' proposal for a restricted new trial was presented in a "by the way" fashion in the "conclusion" portion of their brief, and was not responded to by appellees. I therefore do not pursue the matter further in this dissent.

nurses in attendance did not in fact make a clamp count; but there was no evidence to indicate that the Hospital had any right to control either the application or the removal of the clamps while the doctor was performing the operation, or that its employees were in any way under the control or direction of the Hospital during the operating procedure. On the facts proved, therefore, the only issue of negligence of the hospital was whether it should have had in force a practice, policy or procedure which would require one or more of its employees to make a count of all surgical instruments used in the operation. The Court's opinion overlooks the fact that this issue was discussed at length and was put to the jury by the trial judge several times in his charge:

". . . the only duty of the hospital in this particular instance would be to use the care of an ordinary reasonably prudent person to provide guidelines for the conduct of operations of this character in its operating facilities, and whether it did or did not do that is for you to determine in passing upon the question of negligence of the hospital."

. . . .

"If in your judgment, in the exercise of reasonable care, the Board of Directors should have established guidelines regardless of what other bodies provide, then you could well find the defendant Hospital negligent in failing to have laid down such a guideline. which would require even the operating surgeon to comply with."

It is also to be noted that although no points for charge were submitted by appellants (other than a point for binding instructions) they did request a special verdict as to the duty of the Hospital to require an instrument count by its employees. This request

was accepted by the court, and the jury found no negligence in the failure to have such a requirement.[2]

It is true, as the Court's opinion indicates, that appellants excepted to the court's failure to charge on the general proposition that hospital employees can be the servants both of an operating doctor and a hospital, with possible resultant liability on both, but the court's failure to do so was not prejudicial error under the proof in this case.[3] While the trial court's statement of the so-called "captain of the ship" doctrine was perhaps broader than necessary or proper,[4] it did not rule out a finding of hospital negligence on the only theory warranted by the evidence; it was the jury, not the court, which held the hospital not liable.[5] For the

[2] The special question was: "Was the Pittsburgh Hospital Association negligent for failing to have in effect on September 5, 1963, a rule or regulation requiring a count to be made of all medical instruments in the operating room, prior to terminating the colectomy operation on September 5, 1963 in this case? Yes or No." [Answer] "No."

[3] Judge McKay, the trial judge, acknowledged that "as an abstract legal treatise on the whole subject it [his charge] failed to cover possibilities of other situations that did not prevail at the trial," but stated that ". . . it is not the function of a trial judge to dissert at length on possible situations not related to the case at bar." I agree.

[4] The scope of that doctrine has been most recently expressed by Chief Justice Jones in speaking for the Court in *Thomas v. Hutchinson*, 442 Pa. 118, 275 A.2d 23 (1971) : "the 'captain of the ship' doctrine imposes liability on the surgeon in charge of an operation for the negligence of his assistants during the period when these assistants are under the surgeon's control, even though the assistants are also employees of the hospital. Stated differently, the 'captain of the ship' concept is but the adaptation of the familiar 'borrowed servant' principle in the law of agency to the operating room of a hospital." 442 Pa. at 125.

[5] I disagree with the comment in the majority opinion that because of the doctrine of charitable immunity, the issue of hospital liability was academic before the decision in *Flagiello v. Pennsyl-*

reasons indicated, I would affirm the order of the Superior Court.

Mr. Chief Justice JONES joins in this dissenting opinion.

---

*vania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965). Not all hospitals were or are charities, and claims of immunity were honored only where they were asserted. The opinion of the Court recognizes, indeed, that Justice (later Chief Justice) STERN's formulation of "captain of the ship" rule in *McConnell v. Williams*, 361 Pa. 355, 65 A.2d 243 (1949) was directed to the liability of the physician; it did not exclude joint liability of another person, including a hospital.