Bilonoha et vir *v.* Zubritzky, Appellant, et al.

Argued November 14, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

138

*Robert S. Grigsby*, with him *Janet N. Valentine*, and *Thomson, Rhodes & Grigsby*, for appellant.

*George M. Weis*, with him *Weis & Weis*, for appellee.

OPINION BY HOFFMAN, J., March 31, 1975:

Plaintiff instituted a malpractice action against Dr. Zubritzky and Ohio Valley General Hospital, ("Ohio Valley"), alleging that both defendants were liable for damages resulting from the failure to remove a hemostat from the plaintiff's abdomen at the conclusion of an operation. Following a jury trial, the plaintiff was awarded $135,000 against Dr. Zubritzky. Although all obligations to the plaintiff have been satisfied,[1] the appellant-surgeon contends that the lower court erroneously restricted the possible negligence of the appellee-hospital, and thus prevented the jury from finding both defendants jointly liable.[2]

On October 16, 1966, the plaintiff entered Ohio Valley at the direction and under the supervision of her family doctor, Dr. Zubritzky, for the removal of her gall bladder and the repair of a small umbilical hernia. The operation required that the plaintiff's abdominal cavity be opened. Subsequently the plaintiff developed a ventral hernia

---

1. The plaintiff is not a party to this appeal. Dr. Zubritzky's claim is against Ohio Valley for contribution.

2. Dr. Zubritzky, averring that the hemostat was defectively manufactured, joined Edward Weck and Company, the manufacturer, as an additional defendant. The jury did not find against the manufacturer and no issues are raised in the appeal pertinent to the additional defendant.

where the incision from the 1966 operation had been made. This necessitated a second operation on February 8, 1968, also performed by Dr. Zubritzky and again required the opening of plaintiff's abdominal cavity. In 1972, an x-ray of the plaintiff's abdomen by a different physician revealed the presence of a surgical instrument known as a hemostat, which was surgically removed at St. John's Hospital.

The parties stipulated that the hospital rooms in which the surgical procedures took place were the property of Ohio Valley, and that the operating rooms were under the general care, direction, and control of the hospital. It was further stipulated that the plaintiff was charged by the hospital for the use of its operating rooms. Dr. Zubritzky admitted at trial that the instrument was left in plaintiff's abdomen during the course of one of the operations he performed. Neither Dr. Zubritzky nor his assistant were employees of Ohio Valley.

Ms. Ida Kemp, the operating room nurse, testified at trial that the instruments required by the surgeon were provided by the hospital. The instruments were counted by hospital employees when they were packaged, and were then taken to the operating room as a set. The record reveals that during 1966 and 1968, the appellee-hospital had no standard procedure for counting surgical instruments before they were removed from the operating room, although it was hospital policy to count the sponges to determine that none were left in the patient. Dr. Zubritzky testified that it was impossible for him to make an instrument count personally, but he also stated that he never asked anyone else to do so: "Q. And when you were finished with that set of instruments what would be done with the entire set? A. They are all gathered together, put on the mobile stand and taken out of the room as a set. Q. Are they counted in your presence? A. No, sir. Q. In 1966 and 1968 did you instruct the nurses to count the instruments? A. No, sir. Q. Did the

hospital instruct you, as a physician using their facilities, to count the instruments before the tray left the operating room? A. No, sir. Q. At any time did you ever have occasion to make it your business to count the instruments? A. No, sir. Q. You did, however, count the sponges? A. The sponge count is reported to me as correct or incorrect as it may be. Q. Why was it, Doctor, that you did not instruct the persons under your supervision to conduct a count of the instruments? A. I assumed that I would be informed in case there would be any abnormal count.... Q. Well, who was minding the business of counting the instruments? A. The instruments are brought in as a package, and I assumed they were correct when they were assembled."

Ms. Kemp, recalled as a witness by Ohio Valley, testified on cross-examination in regard to the hospital's procedure for determining whether any surgical instruments were accidentally not removed from the patient: "Q. ... At any time of the day or night, any day of the year did you keep an instrument count of any kind in 1966 or 1968? A. When the instruments are repackaged to be sterilized for future use they had to count properly according to the card, the procedure set up. If we had 90 instruments in a major set, which would be used in general surgery then there would have to be 90 in that set. Q. Now, there was obviously one missing that was in Mrs. Bilonoha's body some time after the operation in October of 1966 or February of 1968? A. Yes. Q. Somebody missed that instrument? A. Right. Q. What did you do in order to try to locate that instrument? A. I don't recall anybody telling me that there was one missing." Ms. Kemp further testified that had she been advised of a missing instrument, she would have immediately notified the surgeon, if her own search failed to reveal its presence.

Dr. Zubritzky does not contest his responsibility in some degree for the unfortunate injuries suffered by the

plaintiff. He contends, however, that the trial court's charge prevented the jury from deciding that the hospital was liable as well: "Turning next to the Ohio Valley General Hospital, you have heard testimony concerning whether or not the instruments used in the operation were counted before and after the operation. Under our law, the surgeon, Dr. Zubritzky, is deemed to be in exclusive control of the operating room when he is performing surgery there; therefore, the failure of the hospital to have required an instrument-count is not evidence of negligence on the part of the hospital, and I instruct you to disregard this evidence in considering whether or not the hospital was negligent.

"With respect to the instrument-count, that is evidence in this case, it may be considered for other purposes, but may not be considered with respect to the Ohio Valley Hospital. *The only way that you can find the hospital has been negligent, under our law, is if you first find the hospital knew or had reason to know that the hemostat in question was dangerous or likely to have been dangerous for use in this operation.*" (Emphasis added).

The recent decision of the Supreme Court in *Tonsic v. Wagner*, 458 Pa. 246, 329 A.2d 497 (1974) compels a reversal. In an almost identical factual situation, the Court held that sufficient evidence was presented to enable the jury to find the hospital negligent under principles of respondeat superior. In so doing, the Court held that it was error for the lower court to rule as a matter of law that a hospital could not be liable for the negligence of its personnel during an operation: "We conclude that agency law principles applicable to others should also apply to hospitals and operating surgeons. Hospitals, as well as the operating surgeons, owe a duty to the patient. If that duty is breached under circumstances from which a jury could reasonably conclude that the negligent party was at the same time the servant of two masters, both masters may be liable. The trial court thus

erred in charging that, as a matter of law, only the operating surgeon could be liable for the negligence of hospital personnel during an operation. The evidence presented raised issues of fact which should have been submitted to the jury with proper instructions. A new trial against the appellee hospital must therefore be granted." (page 7). See also Section 226, Restatement (Second) of Agency. The Court held that the captain of the ship doctrine announced in *McConnell v. Williams*, 361 Pa. 355, 65 A. 2d 243 (1949), "did not hold or say that the operating surgeon, as captain, was the only one who could be held legally responsible for the negligence of other persons in the operating room." (page 4).[3]

The testimony at trial clearly establishes that the hospital exercised a large degree of control over matters essential to the operation, other than the actual performance of the surgery: the hospital owned the operating rooms and charged the plaintiff for their use; the hospital operating rooms were under the general care, direction and control of the general hospital; the hospital owned the instruments used by the surgeon and had procedures

---

3. In its opinion, the lower court expressed dissatisfaction with its view of appellate court interpretation of the captain of the ship doctrine: "Had these issues not been previously decided by appellate court decisions . . . this Court would consider the Hospital as being a co-participant in the matters which occurred during surgery. . . . The Court anticipates that our appellate courts will soon redefine the legal obligations which should be imposed on hospitals. . . . Whether because of the previously existing doctrine of charitable immunity of hospitals or some other reasoning, our courts historically have viewed the operating surgeon as the 'captain of the ship' and therefore in sole command of what transpires during surgery. Thus, a failure to perform an instrument count or a failure to advise the surgeon of any unusual occurrence by an employee of a hospital does not impose liability on the hospital. Therefore, although the defendant Zubritzky argues most persuasively with respect to the facts, this Court must nevertheless turn a deaf ear to his entreaties until such time as the appellate courts make a new pronouncement."

to make them available; the hospital did have a procedure to determine if instruments were missing; and the hospital paid its employees while they were under the supervision of the operating physician. As in *Tonsic v. Wagner*, supra, sufficient evidence was presented for the court to have charged that the hospital and the surgeon may have been jointly and severally liable for the negligence of any of the hospital personnel in the operating room, if the jury believed that any of these persons were personally negligent with respect to the leaving of the hemostat inside the plaintiff's abdomen. See, *Tonsic v. Wagner*, 220 Pa. Superior Ct. 468, 478-79, 289 A. 2d 138 (1972) (HOFFMAN, J., dissenting).

Moreover, the instructions given the jury in the present case prevented them from holding the hospital negligent for not devising adequate rules and regulations which govern the procedures followed by its operating room personnel.[4] Such a charge was given by the lower court in *Tonsic v. Wagner*, supra, although the jury returned a verdict favorable to the hospital.[5] Thus, apart from any issue of respondeat superior, the lower court should have allowed the jury to find that the hospital was negligent in its own right.

Order of the court below is reversed, and the case is remanded for a new trial solely on the issue of the degree of liability, if any, of Ohio Valley General Hospital.

---

4. At trial, Dr. Zubritzky testified that Ohio Valley General Hospital had subsequently introduced a procedure by which the circulating nurse and the instrument nurse count the instruments at the conclusion of an operation.

5. The dissenting opinion in *Tonsic v. Wagner* in this Court, would have held the hospital negligent as a matter of law for failing to have a procedure governing an instrument count.