## Capone v. Roitman

*Gerald F. Kaplan,* for plaintiff.

*Kenwyn M. Dougherty,* for defendant, Pennsylvania Hospital.

*John F.X. Monaghan,* for defendant, Roitman.

*Patrick O. McDonald,* for defendant. Carpiniello.

*William E. Rapp,* for defendants Silver and Casto.

*Joseph R. Livesey,* for defendant Gorham.

*Jay J. Lambert,* for defendant Honish.

LEHRER, *J.,* May 17, 1988 — Before the court in this action are two interrelated motions. The first is a motion to compel the deposition of Harry Heston, the Pennsylvania Hospital Administrator. The second is a motion for summary judgment by defendant Pennsylvania Hospital.

The court heard extensive oral argument on both of these motions and has had the benefit of excellent memorandums of law accompanying each.

The court deferred a decision on the motion to compel discovery of Harry Heston until after it had decided the motion for summary judgment. Obviously, the relevancy of the deposition being sought would depend on the nature of a recognizable cause of action.

The court was made aware in oral argument of the Pennsylvania Superior Court's recent opinion in *Thompson .v. The Nason Hospital and Edward D. Shultz, M.D.,* 370 Pa. Super. 115, 535 A.2d 1177 (1988) filed January 11, 1988 which is currently on allocatur to the Pennsylvania Supreme Court. We have studied that case carefully and our view of it will be set forth in this opinion.

The pleadings, memorandums of law and oral argument establish the following facts which form the basis for our ruling on each of the two motions.

Plaintiff Tish M. Capone and her husband Philip brought suit against six individual physicians and

the Pennsylvania Hospital for injuries sustained by reason of medical malpractice.

On or about June 23, 1981, plaintiff wife consulted defendant Harry B. Roitman, M.D. because of severe pain in her right side which she claims had persisted for the previous two years but had gotten worse within six to eight months after she first consulted with Dr. Roitman. On July 25, 1981 at the Pennsylvania Hospital, Dr. Roitman performed a diagnostic laparoscopy under general anesthesia and, among other procedures, removed her right fallopian tube and right ovary.

In May 1982, plaintiff consulted defendant Dr. William K. Gorham because of pain she described as a knot in her abdomen. Plaintiff alleges that Dr. Gorham diagnosed her problem as an incisional hernia that had occurred during the operation performed by Dr. Roitman in June 1981.

On May 30, 1982, plaintiff was again admitted to the Pennsylvania Hospital. At that time, Dr. Gorham consulted with defendant Dr. Honish who recommended the use of spinal anesthesia and approved of the surgical procedures to be carried out. Thereafter, Dr. Gorham performed an incisional herniorrhapy and partial bladder recission. Dr. Gorham also repaired the incisional hernia.

After the operation, plaintiff developed occasional stress incontinence and she noticed a reoccurrence of the hernia.

On October 26, 1982, plaintiff had additional bladder surgery at defendant hospital performed by defendant Dr. Carpiniello. During this operation, Dr. Gorham placed synthetic mesh for abdominal wall support to correct plaintiff's incisional hernia.

Plaintiff alleges in her complaint that since the surgery of October 1982, she has had weakness in the right side of her body, loss of bowel and bladder

control, perineal anesthesia. She further alleges suffering persistent intermittent drainage from the abdominal wound and chronic wound infection at the site of the incision from the October 1982 surgery.

The gravamen of plaintiff's case against Dr. Gorham in express or specific terms has not been set forth as far as the court can determine from the record. However, in general terms, plaintiff alleges that she suffered the aforementioned injuries as a proximate result of certain negligence and professional misconduct in connection with Dr. Gorham's two surgeries and postoperative care. Although plaintiff does not allege the following, she represents in her brief and oral argument that Dr. Gorham was not competent to perform these surgeries due to the fact that he was not properly licensed, had no malpractice insurance and had engaged in conduct to which later gave rise to charges of mail fraud, and counts of false claims against the U.S. government, felonies to which he later pleaded guilty. All of these events it is alleged were operative at the time plaintiff was a patient in the hospital.

The negligence attributed to defendant hospital, the moving party herein, is set forth in paragraph 8 of plaintiff's complaint. There she alleges:

"(a) failure to render reasonable hospital care;

"(b) failure to render reasonable nursing care;

"(c) *failure to have properly trained, experienced, knowledgeable and reasonable people on duty attending plaintiff*;

"(d) failure to listen and act on plaintiff's complaints;

"(e) failure to properly diagnose plaintiff's condition;

"(f) failure to conduct the proper tests to diagnose plaintiff's condition;

"(g) failure to provide reasonable and proper pre and post operative care;

"(h) negligence as a matter of law." (emphasis supplied)

Pursuant to Pa. R.C.P. 1035, a motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, a court must examine the record in the light most favorable to the non-moving party, deem all the allegations of the non-moving party as well-pleaded and resolve all doubts against the moving party. *Graf v. State Farm Co.*, 352 Pa. Super. 127, 507 A.2d 414 (1986).

The totality of the pleadings, memorandums of law and arguments of counsel establish that plaintiff's claim of negligence against defendant hospital is based on every conceivable theory of liability existent. Her complaint, however does not explicitly and precisely set forth these theories.

Nonetheless, under rule Pa. R.C.P. 1035 that the non-moving party's allegations must be assumed as true and be given the benefit of every doubt, we conclude that paragraph 8(c) of her complaint sets forth theories of vicarious liability, ostensible agency and corporate liability.

Paragraph 8(c) noted above, and repeated here for emphasis, states:

"8(c) failure to have properly trained, experienced, knowledgeable and reasonable people on duty attending plaintiff."

Both sides seem to concur in this approach since they stress in their briefs and arguments that these theories must be addressed, particularly in view of *Thompson, supra.*

It goes without saying that the commonwealth recognizes the doctrine of respondeat superior as a

basis for vicarious liability, vis-a-vis a hospital and a salaried physician. *Tonsic v. Wagner,* 458 Pa. 246, 329 A.2d 497 (1974). The court in *Tonsic* concluded that:

"[A]gency law principles applicable to others should also apply to hospitals and operating surgeons. Hospitals, as well as the operating surgeons, owe a duty to the patient . . ."

Under this doctrine a hospital is liable when the negligent physician is an employee of the hospital. As the employer, the hospital is held responsible for all acts of its employees performed or omitted within the scope of their employment. *Capan v. Divine Providence Hospital,* 287 Pa. Super. 364, 430 A.2d 617 (1980).

Though it is the general rule that an employer is not liable for torts committed by an independent contractor in his employ, *McDonough v. U.S. Steel Corp.,* 228 Pa. Super. 268, 324 A.2d 542 (1974), the Restatement of Torts provides an exception:

"One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants." Restatement (Second) of Torts §429 (1965).

The section 429 approach to liability has been labeled the ostensible agency theory. S. Haskell, *Hospital Responsibility for Physician Negligence: Changing Concepts of Liability,* 1 Med. Malprac. Cost Containment J. 32, 26 (1979). Several courts have applied the ostensible agency concept to cases involving hospital liability for the negligence of in-

dependent contractor physicians. See *Capan v. Divine Providence Hospital, supra.*

The factors said to justify a finding of an ostensible agency relationship between the hospital and the physician are the following:

(1) The changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care. *Greive v. Mt. Clemens Hospital,* 404 Mich. 240, 273 N.W. 2d 429 (1978);

(2) The hospital "holds out" the physician as its employee. *Brown v. Moore,* 247 F.2d 711 (3d Cir. 1957) (applying Pennsylvania law).

A holding out occurs "when the hospital acts or omits to act in some way which leads the patient to a reasonable belief that he is being treated by the hospital or one of its employees." *Adamski v. Tacoma General Hospital,* 20 Wash. App. 98, 579 P.2d 970 (1978).

Some jurisdictions have interpreted the doctrine of corporate liability as:

(1) imposing an affirmative duty to supervise and monitor the activities of independent staff physicians or

(2) imposing an affirmative duty to use due care in the selection and retention of staff physicians. Post, *The Law of Medical Practice in Pennsylvania and New Jersey,* 213.

The former interpretation has been applied within a limited scope. *Darling v. Charleston Community Memorial Hospital,* 33 I. 2d 326, 211 N.E. 2d 253 (1965) (hospital has a duty to supervise); *Bost v. Riley,* 44 N.C. App. 638, 262 S.E. 2d 391 (1980) (hospital has duty to monitor physician activities); *Fridena v. Evans,* 127 Ariz. 516, 622 P.2d 463, 12 ALR 4th 46 (1980) (hospital has duty to supervise in unique factual situation).

As noted above (2), some jurisdictions have imposed corporate liability by imposing a duty of due care on the hospital in the selection and retention of staff physicians. *Purcell v. Zimbelman,* 18 Ariz App. 75, 500 P.2d 335 (1972); *Elam v. College Park Hospital,* 132 Cal. App. 3d 332, 183 Cal. Rptr. 156 (1982, 4th Dist.); *Mitchell County Hospital Authority v. Joiner,* 229 Ga. 140, 189 S.E. 2d 412 (1972). Under this principle, a hospital is liable for an independent staff physician's negligence if the hospital knew or had reason to know that the physician was incompetent or was likely to perform negligently. *Zaremski v. Spitz,* Are the Walls of Jericho Tumbling? 16 Forum 225, 236-40 (1980).

This court's examination of the many cases cited above and referred to in the briefs reveal a common public policy for the application of both theories, corporate liability and ostensible agency. For example, both *Capan, supra,* and *Thompson, supra,* emphasize the changing role of hospitals in society as a basis for hospital liability. People, today, more and more go to hospitals for an array of services and treatment rendered by an ever-broadening scope of personnel with a decreasing proportionate role by any given physician.

Concomittently, today, patients enter a hospital for services frequently without knowing who their doctor is or will be and have little or no communication with the actual providers of service. In most instances, hospitals directly bill patients for services. Under such circumstances, patients cannot be expected to know of special contractual relationships between physicians and the hospital.

While the ostensible agency theory focuses on an indirect duty of the hospital arising out of actions and appearances of its employees and of the independent contractors working on the hospital prem-

ises, the doctrine of corporate liability speaks of a more positive and direct duty owed by the hospital to the patient. Importantly, a breach of the duty must be the proximate cause of the harm to the plaintiff.

No Pennsylvania appellate court has expressly recognized the doctrine of hospital corporate liability prior to *Thompson, supra.*

In that case, plaintiff was a motor vehicle accident victim who was taken by ambulance to the emergency room of Nason Hospital. She was admitted with head and leg injuries at the same time that a Dr. Shultz entered the hospital through the emergency room on his way to making rounds. Dr. Shultz was not on call in the emergency room but began treating plaintiff without being requested by plaintiff or her husband. Dr. Shultz was not an employee of defendant hospital.

Thereafter, Dr. Shultz attended to plaintiff's care during her hospitalization. Plaintiff alleged that later she developed an intracerebral hematoma and other subsequent injuries as a result of Dr. Shultz's negligent care. There appears in *Thompson* to be a disputed issue of fact whether or not plaintiff had received treatment of some kind from Dr. Shultz prior to her emergency room admission.

Plaintiff alleged a theory both of ostensible agency and of corporate liability as a basis for holding the hospital liable in the absence of an actual or expressed agency relationship between Dr. Shultz and the hospital. The lower court there granted a motion for summary judgment filed by the hospital. The Superior Court on appeal reversed.

We read *Thompson* to be far less sweeping in its application of hospital liability than that urged upon us by plaintiff. *Thompson* unquestionably recognizes liability on the part of the hospital on a theory

of ostensible agency, applicable of course, where a plaintiff is led to believe that he or she is dealing with a hospital. The reversal in *Thompson* was in large part due to the existence of such material issue of fact that had to be resolved by testimony at trial.

No such issue of material fact is present in this case. Plaintiff Mary Capone did not deal with Dr. Gorham or any of the other defendants believing that they were employees of the hospital.

The Superior Court in *Thompson*, however, went further to speak of the "theory of corporate liability with respect to a hospital." The court describes the theory of corporate liability in terms outlined above including the necessity to show actual or constructive knowledge on the part of the hospital of procedures utilized and/or factors relating to competency and that that failure was a substantial factor in bringing about the harm.

However, the Superior Court left several questions both unasked and unanswered. Such a posture indicates to this court that the Superior Court's comments on corporate liability are in large part dictum.

The unanswered questions, inter alia, are: what constitutes the hospital for purposes of the performance of the duty imposed? Is it the board of directors? The president of the hospital? The chairman of the board? An ethics committee? An educational committee? An internal review committee? A credentials committee?

Merely to ask the question suggests the impractibility of such a theory of liability. To ignore the issues raised by these questions would mean that *Thompson* had adopted a theory of *absolute* liability on the part of the hospital. (emphasis supplied)

The above notwithstanding, nonetheless, we hold the following to be the basis of a cause of action against defendant hospital in the case before us under a theory of corporate liability.

A hospital has a positive duty to the patient to keep from its premises incompetent and unqualified physicians. Stated more positively, a hospital has an affirmative duty directly to the patient to use due care in the selection and retention of staff physicians. This duty is breached when a hospital permits incompetent and unqualified persons to practice medicine on its premises. Like any other breach of a duty owed, such breach must be shown to be the proximate cause of any resulting injury.

It now becomes necessary to define competence/incompetence, qualified/unqualified. Incompetence goes to the underlying suitability of a physician in terms of his basic and fundamental qualifications to practice. Competence has several planes or dimensions — legal, professional and personal.

In a legal sense, it relates to the requirements for licensure. In a professional sense, it relates to a relevant history of a high rate of complications and negligent practices resulting in serious injuries to patient. The absence of malpractice insurance coverage due to such a history is encompassed in this dimension. Permitting one to work in a particular field of expertise without professionally accepted credentials although one might legally be entitled to engage in such work is another.

On a personal plane, it relates to such characterization as an addiction to narcotic substances which affect judgment and physical response; emotional or mental instabilities characterized by depression, inattentiveness or euphoria. It relates also to conduct involving crime with or without crimen falsi.

In the case at bar, plaintiff may recover against the hospital if she can prove the requisite nexus between Dr. Gorham's competency and qualifications or lack thereof (as above defined) and the harm plaintiff claims she has suffered. Further, that the hospital knew or should have known of Dr. Gorham's incompetency. The hospital administrator, or a physician or a body of physicians entrusted by the hospital's charter, by-laws or other appropriate governing articles responsible for the granting or maintenance or professional credentials constitutes the hospital for purposes of attributing to it actual or constructive knowledge.

It is important to repeat at this juncture that the policy reasons for the adoption of both the ostensible agency theory and corporate liability theory are basically identical. Both are due to the changing role of the hospital/physician/patient triad. The cause of action recognized, defined and limited herein is consistent with the public policy underlying both theories as expressed in the cases and in the commentaries.

Wherefore, an appropriate order will be entered delineating the principles of law enunciated above.

## ORDER

And now, May 17, 1988, upon consideration of defendant Pennsylvania Hospital's motion for summary judgment and defendant Pennsylvania Hospital's motion to stay the deposition of Harry Heston, and the responses thereto, the following is hereby ordered and decreed:

(1) This court's order of February 9, 1988 staying the deposition of Harry Heston is vacated.

(2) Plaintiffs may proceed pursuant to Pa. R.C.P. 4007.1(e) to depose Harry Heston. Said depositions shall be limited to the knowledge of defendant Pennsylvania Hospital of defendant Dr. Gorham's

competency and qualifications as defined in the opinion of this court issued this date.

(3) Defendant Pennsylvania Hospital's motion for summary judgment is granted, except in so far as, and limited to proof by plaintiff that Dr. Gorham was incompetent and unqualified, as defined in the opinion of this court issued this date and that defendant Pennsylvania Hospital had acutal or constructive knowledge of same and that such was the proximate cause of plaintiff's injury.