## Benedict, Appellant, *v.* Bondi.

Argued March 12, 1956. Before Stern, C. J., Jones, Bell, Musmanno and Arnold, JJ.

*Bresci R. P. Leonard,* with him *Paul K. McCormick* and *Van der Voort, Royston, Robb & Leonard,* for plaintiffs, appellants.

*William A. Challener, Jr.,* for defendant doctor, appellee.

*Bruce R. Martin, David Roth, Dalzell, Pringle, Bredin & Martin* and *Kaplan, Finkel & Roth,* for defendant hospital, appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, April 16, 1956:

This case is ruled by the principles enunciated in *McConnell v. Williams,* 361 Pa. 355, 65 A. 2d 243.

According to the testimony presented on behalf of plaintiffs it appears that the minor plaintiff, J. Hogan Benedict, a three-year old child, became seriously ill one evening and was rushed the next day to the McKeesport Hospital where an emergency operation was performed by defendant Dr. Frank R. Bondi. Mrs. Jean Streigel Waddell, also a defendant, was then a student nurse at the hospital working in and about the operating rooms. She testified that she did not remember the Benedict boy being brought into the room; that some unidentified person requested her to get two hot water bottles; that she did this and upon her return to the operating room was told to fill them; that she filled them out of the hot water faucet in a small instrument scrubbing room off the operating room; that she did not remember whether she made any test whatever of the temperature of the water; that when she came back into the operating room she covered the bottles, not with flannel covers as was the proper practice, but with muslin pillow cases; that when she was about to apply them to the patient, who was then lying prone on the operating table and was partly under the anesthetic, she was told not to do so by Dr. Bondi who was standing about two feet from the operating table; that he told her to give the bottles to Mrs. Irma

Bieda, another of the defendants, to put on the child. Mrs. Bieda, who was a graduate nurse and was then on general duty in the operating room, testified that Dr. Bondi told her to apply the bottles, so she placed them on the outer sides of the child's feet; that as soon as the anesthetist said that the child was completely under—which was about three minutes after the hot water bottles had been placed—Dr. Bondi began the actual incision; that in and out of the operating room were several nurses and that an assistant to the surgeon and a number of spectators were also present. It was testified that after the operation was over (which proved ultimately to be successful) the child was taken to his room in the hospital whereupon the floor nurse discovered that his feet were badly burned; a later examination disclosed that he had suffered third degree burns with destruction of the subcutaneous tissue down to the bone. There was testimony that the water in the bottles should not have been of a temperature greater than 115 or 120 degrees, but that, in order to have caused the injury it produced, it must have been at the 212 degree boiling point.

To recover for the child's injuries his father as guardian and also in his own right, brought suit against Dr. Bondi, Dr. Fred Battaglia,[1] Mrs. Waddell, Mrs. Bieda, and McKeesport Hospital. The court entered nonsuits as to all defendants, but the court en banc subsequently removed the nonsuits as to the nurses. Plaintiffs appeal from the court's refusal to take off the nonsuits as to Dr. Bondi and McKeesport Hospital.

The only question now in issue is the liability of Dr. Bondi for alleged negligence of the nurses in the

---

[1] The action against Dr. Battaglia was severed from that of the other defendants, has not been tried, and is not before us on this appeal.

application of the hot water bottles to the child's feet. It is true that plaintiffs also protest against the action of the trial court in entering a nonsuit as to the McKeesport Hospital,—not that they contend that the hospital can be held liable (*Gable v. Sisters of St. Francis*, 227 Pa. 254, 75 A. 1087; *Siidekum, Administrator v. Animal Rescue League of Pittsburgh*, 353 Pa. 408, 45 A. 2d 59; *Bond v. Pittsburgh*, 368 Pa. 404, 84 A. 2d 328), but on the ground that the nonsuit was prematurely entered. It appears that in the course of the opening address of plaintiffs' counsel to the jury he stated that he agreed that the law would not permit a recovery against the hospital, whereupon counsel for the hospital moved that a nonsuit be entered in its favor, and the court granted the motion. While this practice was somewhat irregular it followed naturally upon counsel's immediate admission of the nonliability of the hospital. In any event no harm could have resulted thereby to plaintiffs; on the contrary it would seem that, since the jury were thus informed that the hospital could not be held liable, it became more likely that they would have accepted Dr. Bondi as the legally responsible party.

We revert, then, to the question of Dr. Bondi's liability.

In *McConnell v. Williams*, supra, the subject of the liability of a surgeon in the operating room for the negligence of assistants, internes, nurses and attendants under his control was discussed at length. There the surgeon performed a Caesarean operation and after the delivery of the child he turned it over to an interne who allegedly applied an excessive amount of silver nitrate to its eyes, practically blinding it. We held that, while the interne was in the *general* employ of the hospital where the operation was performed, this did not necessarily prevent his becoming, *pro hac vice*,

the employe of the surgeon when his services were loaned to the latter by the hospital and becoming thereby subject to the surgeon's orders, direction, supervision and control in connection with the work he was called upon to perform. We further held that, while the surgeon himself had not committed, nor even was charged with having committed, any act of negligence, if it were determined that he had such authority and control over the interne at the time of the occurrence his own liability would automatically follow, for the very essence of the doctrine of respondeat superior is that, where there is authority over the work of another, there is liability for its negligent performance and it is immaterial whether such authority is actually exercised or not, the only question being whether it exists. And, finally, we pointed out that, where different inferences could fairly be drawn from the evidence as to who was the controlling master of the borrowed employe at the time of the commission of the negligent act, it was for the jury, not the court, to determine the question of agency.[2]

The exact question, then, presented in the present case is whether Mrs. Bieda, when she placed the hot water bottles at the feet of the child, had come under the control and authority of Dr. Bondi with respect to that action. There was testimony by Dr. Whitney C. Corsello,[3] called by plaintiffs, that "when he [the

---

[2] *Dunmire v. Fitzgerald*, 349 Pa. 511, 516, 37 A. 2d 596, 599; *Siidekum, Administrator v. Animal Rescue League of Pittsburgh*, 353 Pa. 408, 414, 45 A. 2d 59, 62; *Kissell v. Motor Age Transportation Lines, Inc.*, 357 Pa. 204, 209, 53 A. 2d 593, 595, 596; *Mature v. Angelo*, 373 Pa. 593, 97 A. 2d 59.

[3] His testimony was in line with what was said in *McConnell v. Williams*, supra (p. 362, A. p. 246): "And indeed it can readily be understood that in the course of an operation in the operating room of a hospital, and until the surgeon leaves that room at the conclusion of the operation, . . . he is in the same complete charge

surgeon] is in the operating room, he is boss. . . . Whatever goes on in that room insofar as his operation is concerned is his affair and is his concern. Well, he is in charge, he can give orders and they must be followed out regardless whether the operating supervisor or the scrub nurse or his assistant objects or not."[4] Dr. Bondi contends that such control does not exist in regard to either pre-operative preparation or post-operative care which is not administered in the operating room in the presence of the surgeon and under his direct charge, and such indeed is the law: *McConnell v. Williams,* supra, p. 364, A. p. 247; *Shull v. Schwartz,* 364 Pa. 554, 73 A. 2d 402; *Scacchi, Administrator v. Montgomery,* 365 Pa. 377, 75 A. 2d 535. Certainly it is true that a nurse's activities in preliminarily cleaning the operating room, placing clean sheets on the operating table, preparing gowns and gloves, sterilizing the instruments to be used in the operation and seeing that they are available for the purpose, making ready the sterile drapes, placing the patient on the operating table,—all these are administrative or ministerial acts performed by the nurse as an employe of the hospital and in regard to which the doctor or surgeon has not yet—to use a colloquialism—"come into the picture."

of those who are present and assisting him as is the captain of a ship over all on board, and that such supreme control is indeed essential in view of the high degree of protection to which anaesthetized, unconscious patient is entitled, . . . ."

[4] Mrs. Waddell also was questioned as to who had control over her actions when she was preparing for the operation and while the operation was in progress. The Court erroneously sustained an objection as to her competency. This subject of inquiry was the very nub of the case, and an agent or servant is always competent to testify as to his authority and his relation to his principal or master: *Hileman v. Falck,* 263 Pa. 351, 106 A. 633; *Bunting v. Goldstein,* 283 Pa. 356, 129 A. 99; *Humphrey v. Brown,* 291 Pa. 53, 139 A. 606; *Renfro v. Smith,* 135 Pa. Superior Ct. 578, 7 A. 2d 7.

But here the jury might have found from the testimony that the application of the hot water bottles to the child's feet was not merely an administrative act of the nurse similar to her performance of such other functions but a medical or therapeutic act (see Hayt, Hayt & Groeschel, "Law of Hospital, Physician, and Patient", 2nd ed., p. 385); that such an application is not a routine matter in all operative procedure but is sometimes employed where the patient is in shock; that it is therefore a decision for the surgeon to make and for him to determine and direct if, when and how heat should be applied; that Dr. Bondi not only had the complete authority and control in the operating room as to which Dr. Corsello testified, but that he actually gave orders to the one nurse, the student nurse, not to apply the hot water bottles to the child, and orders to the other nurse, the graduate nurse, to do so; and therefore, as the result of such findings, that his legal responsibility did not begin merely at the exact moment when he started to make an incision in the child's body but that the operative process started with, and included, the application to the child—in the operating room and under the eye of the surgeon—of the hot water bottles designed, as they were, to assist in the rehabilitation and restoration of the patient's strength, health and well-being. If the jury found that such were the facts it would follow that Dr. Bondi would be liable for Mrs. Bieda's alleged negligence and that therefore a nonsuit as to Dr. Bondi should not have been entered.

The order of the court below removing the nonsuits as to defendants Jean Streigel Waddell and Irma or Erma Bieda is affirmed. The refusal of the court to remove the nonsuit as to McKeesport Hospital is affirmed. The refusal of the court to remove the nonsuit as to defendant Dr. Frank R. Bondi is reversed,

and plaintiffs are granted a new trial as to defendants Jean Streigel Waddell, Irma or Erma Bieda, and Dr. Frank R. Bondi.