Thomas *v.* Hutchinson, Appellant.

Argued October 1, 1970. Before BELL, C. J., JONES, EAGEN, O'BRIEN and POMEROY, JJ.

*Bruce R. Martin,* for appellant.

*Frederick N. Egler,* with him *Robert S. Garrett,* and *Egler, McGregor & Reinstadtler,* for appellee.

OPINION BY MR. JUSTICE JONES, March 18, 1971:

The facts underlying this appeal involve the claim of William E. Thomas, plaintiff-appellee, for personal injuries occasioned by the alleged negligence of Dr. Paul V. Hutchinson, appellant's decedent, in the performance of a surgical operation on plaintiff-appellee.

Following receipt of all the evidence in the case, the court directed the jury to find a verdict in favor of plaintiff-appellee, leaving to the jury the assessment of damages. From a verdict in favor of the plaintiff-appellee in the sum of $120,000, appellant moved for judgment n.o.v. and for a new trial. These motions were denied by the court below and judgment was entered on the verdict. This appeal followed.

Plaintiff-appellee was a patient of Dr. Hutchinson, an orthopedic surgeon, on whose advice plaintiff-appellee underwent an operation to remove a ruptured vertebral disc. On August 22, 1963, Dr. Hutchinson, assisted by three orthopedic residents, *i.e.*, medical doctors who were then receiving specialized training, performed the surgery in the operating room of St. Francis Hospital. These residents were selected from the hospital staff for this particular operation by the operating room supervisor, who was employed, as were the residents, by the hospital. After Dr. Hutchinson removed the disc and performed the related surgery, he left the operating room as he allowed the residents to close the surgical incision and remove the remaining sponges. As there was no general improvement in plaintiff-appellee's condition, a subsequent operation was performed by a Dr. Watson, who found a surgical sponge which was admitted by the appellant's decedent to be one of the sponges employed in the operation of August 22, 1963.

In *Davis v. Kerr*, 239 Pa. 351, 86 Atl. 1007 (1913), we held that where a sponge is left in the body of a patient following surgery in which the sponge was used, a presumption of negligence on the part of the operating surgeon arises and the burden is upon the operating surgeon to rebut this presumption. *See, Demchuk v. Bralow*, 404 Pa. 100, 105, 170 A. 2d 868, 870 (1961) ; *Donaldson v. Maffucci*, 397 Pa. 548, 556, 156 A. 2d 835,

839 (1959); *Robinson v. Wirts,* 387 Pa. 291, 297-98, 127 A. 2d 706, 710 (1956); *De Rose v. Hirst,* 282 Pa. 292, 127 Atl. 776 (1925). Assuming, arguendo, that under *Davis v. Kerr,* 239 Pa. 351, 86 Atl. 1007 (1913), a presumption arose that Dr. Hutchinson, the operating surgeon, was negligent, the instant problem involves the propriety of the court below *in directing a verdict* for plaintiff-appellee and against Dr. Hutchinson. Under the instant factual posture, the liability of the operating surgeon would have to be bottomed, if at all, upon a theory of direct negligence* on the part of the operating surgeon, Dr. Hutchinson, or upon a theory of vicarious liability.

The presumption of direct negligence on the part of the operating surgeon imposed by *Davis v. Kerr* is, at best, a rebuttable presumption. In the case at bar, the testimony of Dr. Hutchinson, taken on deposition, was oral in nature, even though transcribed when presented at the trial, and showed that after the surgery involved in the removal of the disc was completed by Dr. Hutchinson, he left the operating room, leaving the removal of the sponges and the closure of the surgical incision to the resident surgeons. If believed by the jury, this testimony would tend to rebut the presumption of any direct negligence on the part of Dr. Hutchinson unless the fact that he left the operating room before the removal of the sponges and closure of the incision constituted negligence as a matter of law. In

---

* The court below achieved this result on the theory of direct negligence by holding the "operation" did not end until the incision was finally closed. Accordingly, Dr. Hutchinson was deemed to remain in control of the operation despite his early departure. As to the liability of the operating surgeon for failure to remove foreign objects placed in the wound, *see* Annot., 10 A.L.R. 3d 9 (1966).

For a discussion of a surgeon's liability for the negligence of an assisting nurse or fellow doctor, *see* Annot., 12 A.L.R. 3d 1017 (1967); Annot., 85 A.L.R. 2d 889 (1962).

*De Rose v. Hirst,* 282 Pa. 292, 127 Atl. 776 (1925), a slightly different factual situation was presented: after making the necessary incision and performing an abdominal operation, the operating surgeon left the operating room with the wound open and left the duty to clean it out and close the incision (save a part left open for drainage purposes) to an assisting surgeon; the latter testified that the operating surgeon had counted the sponges inserted into the body of the plaintiff and then, upon completion of his part of the surgery, had removed and counted the sponges prior to his departure from the operating room; following the operation, it was necessary to place in the wound a piece of gauze for drainage purposes and this work was performed by the assisting surgeon. Because plaintiff's testimony in *De Rose* failed to sufficiently identify that which was taken from her body post-operatively as a "pad" or a "sponge" used by the operating surgeon rather than the piece of gauze inserted by the assisting surgeon, this Court upheld the entry by the court below of the nonsuit against the plaintiff.

Despite the different factual situation, the importance to the case at bar of *De Rose v. Hirst* is that this Court, distinguishing *Davis v. Kerr* from *De Rose v. Hirst,* said, *inter alia*: "Manifestly the rule of [*Davis v. Kerr*] cannot be applied here in view of the nature of [the operating surgeon's] part in the operation. He did not [as did Dr. Kerr] carry the operation through to completion; others, for whose actions he would not be responsible, were involved, and, so far as the evidence shows, it is just as probable that they committed the act upon which this case is founded, as that appellee was guilty of it." 282 Pa. at 296, 127 Atl. at 777-78. Accordingly, *De Rose v. Hirst* negates the view that the departure of the surgeon from the operating room prior to closure of the incision is negligence per se.

On the subject of direct negligence, the case of the plaintiff-appellee rests on the presumption enunciated in *Davis v. Kerr* and the defense thereto is based upon oral testimony and should have been submitted to the jury rather than having a direction to the jury to find for the plaintiff-appellee. *See Zenner v. Goetz*, 324 Pa. 432, 188 Atl. 124 (1936). In *Zenner*, the Court said, *inter alia*, 324 Pa. at 437, 188 Atl. at 126: "Where a presumption in favor of a plaintiff must be overcome by a defendant if the issue is not to go against the latter, the rule has been established that the jury must determine the issues of fact if the defense is based on oral testimony." *See Hartig v. American Ice Co.*, 290 Pa. 21, 33, 137 Atl. 867, 871 (1927). Even though the burden was upon Dr. Hutchinson to rebut or overcome the presumption of direct negligence, the testimony adduced on his behalf being oral, even though uncontradicted, must be submitted for determination by the jury. Under the instant circumstances and on the posture of this record, the court below fell into error in directing a verdict for plaintiff-appellee and against the operating surgeon on any theory of direct negligence.

The major controversy between the parties, both in their briefs and in oral argument, concerns the question of vicarious liability on the part of the operating surgeon. The court's rationale for imposing vicarious liability rested on alternative grounds; an admission of agency and the "captain of the ship" theory.

In support of its conclusion that the interns were the agents of Dr. Hutchinson, the court believed that the admission of Dr. Hutchinson in his pretrial deposition, which was read into the record, describing the residents as his "assistants" and himself as the one "directing" the operation was an admission of agency. We do not believe that either statement clearly demonstrates the requisite agency relationship and to con-

124

clude otherwise would penalize Dr. Hutchinson for what might possibly be loose language. Our reading of the record nowhere discloses any admission of agency. However, the same result would follow if the "captain of the ship" doctrine may properly be invoked.

This latter concept evolved from the language chosen by Mr. Justice (later Mr. Chief Justice) Horace STERN in his famous opinion in *McConnell v. Williams,* 361 Pa. 355, 362, 65 A. 2d 243, 246 (1949) : "in the course of an operation in the operating room of a hospital, and until the surgeon leaves the room at the conclusion of the operation, . . . he is in the same complete charge of those who are present and assisting him as is the captain of a ship over all on board [footnote omitted]. . . ." *McConnell* reversed the entry of a nonsuit on behalf of an obstetrician as it held the doctor could be liable for the negligence of an assisting intern *if* the relationship between the obstetrician and the intern could be proven to be that of master-servant. This concept was next employed in *Benedict v. Bondi,* 384 Pa. 574, 122 A. 2d 209 (1956), to remove a nonsuit entered on behalf of a surgeon where a nurse negligently burned the patient during the course of the operation. Later, it was used to affirm a jury verdict against a doctor who permitted a resident intern to operate in his stead when the patient was injured through the failure of others to inform either the intern or the doctor of the patient's allergy to penicillin in *Yorston v. Pennell,* 397 Pa. 28, 153 A. 2d 255 (1959). The utilization of this doctrine was continued in the companion cases of *Rockwell v. Stone,* 404 Pa. 561, 173 A. 2d 48 (1961), and *Rockwell v. Kaplan,* 404 Pa. 574, 173 A. 2d 54 (1961), where this Court affirmed jury verdicts against both the surgeon and the chief anesthesiologist of the hospital for the negligence of the chief anesthesiologist and his assistants in not reporting or medically re-

sponding to an unusual occurrence during the injection of sodium pentothal which caused the later amputation of the patient's left arm. Our most recent pronouncement on this concept occurred in *Collins v. Hand*, 431 Pa. 378, 246 A. 2d 398 (1968), as we reversed a judgment against a psychiatrist for the alleged negligence of others, who, we concluded, were not under the control or supervision of the psychiatrist when the alleged acts of negligence took place. Briefly summarized, the "captain of the ship" doctrine imposes liability on the surgeon in charge of an operation for the negligence of his assistants during the period when these assistants are under the surgeon's control, even though the assistants are also employees of the hospital. Stated differently, the "captain of the ship" concept is but the adaptation of the familiar "borrowed servant" principle in the law of agency to the operating room of a hospital.

As we noted earlier, the issue before us is whether the facts in this case warranted the court's directing the jury to find against the appellant on the issue of liability. Both *McConnell* and *Benedict* involved the propriety of a nonsuit entered on behalf of a doctor— effectively the exact opposite of the procedure employed by the court below. Particularly relevant is the closing paragraph of the *McConnell* opinion: "In the present case the court erred in entering a nonsuit. *It is for the jury to determine whether the relationship between defendant and the interne, at the time the child's eyes were injured, was that of master and servant.* If such was the relationship, defendant is legally liable for the injury caused by the interne's alleged negligence. In determining whether the interne was defendant's servant at that time, the mere fact that he was then in the general employ of the hospital would not prevent the jury from finding that he was also at that same time

the servant of defendant if he was then subject to his orders in respect to the treatment of the child's eyes with the silver nitrate solution." (Emphasis added) 361 Pa. at 366-67, 65 A. 2d at 248. It seems illogical to require a jury determination in the *McConnell* situation and not in this one. The opinions in *Yorston, Rockwell v. Stone* and *Rockwell v. Kaplan,* did not present the instant problem as this Court was aided by jury verdicts indicating that the doctor in charge of the operation was indeed the "captain of the ship." It appears to us that the question whether these residents were Dr. Hutchinson's deckhands is one of fact that ought properly be left to the jury.

In addition, we note that this doctrine was announced before the decision of this Court in *Flagiello v. Pennsylvania Hosp.,* 417 Pa. 486, 208 A. 2d 193 (1965), discarding the immunity from liability in tort previously enjoyed by public hospitals. In enunciating the "captain of the ship" theory in *McConnell,* it was no coincidence that this Court noted, "if operating surgeons were not to held liable for the negligent performance of the duties of those then working under them; the law would fail in large measure to afford a means of redress for preventable injuries sustained during the course of such operations." 361 Pa. at 364, 65 A. 2d at 247. Thus, any willingness to characterize a head surgeon as the "captain of the ship" in order to financially restore the patient should be clearly negated in light of the *Flagiello* opinions. If, in fact, the residents were negligent, either the hospital or the head surgeon could be vicariously liable, depending, of course, on whether the residents were "borrowed." Hence, this factual determination is well nigh dispositive of the case and should be decided by the jury.

The court below properly denied judgment n.o.v., but erred in dismissing the motion for a new trial. The

question of Dr. Hutchinson's liability should have been submitted for determination by the jury rather than determined by the court.

Judgment reversed and new trial granted.

Mr. Justice EAGEN concurs in the result.

Mr. Justice COHEN and Mr. Justice ROBERTS took no part in the consideration or decision of this case.