ST. PAUL FIRE & MARINE INSUR-
ANCE COMPANY and Medical Pro-
tective Company, Plaintiffs,

v.

The AETNA CASUALTY & SURE-
TY COMPANY, Defendant.

Civ. No. 74–713.

United States District Court,
M. D. Pennsylvania.

Aug. 28, 1974.

T. E. Byrne, Jr., Philadelphia, Pa., R. Hart Beaver, Lebanon, Pa., for plaintiffs.

James K. Thomas, Metzgar, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

In September, 1969, in the Court of Common Pleas of Northumberland County, Pennsylvania, Lena Derrick sued the Sunbury Community Hospital and Mary Yankosky, M.D., for medical malpractice. Dr. Yankosky was insured by the Medical Protective Company for up to $100,000 per claim arising out of medical malpractice. Also, she was provided with excess medical malpractice insurance coverage by the St. Paul Fire and Marine Insurance Company. The Sunbury Community Hospital was insured by the Aetna Casualty and Surety Company up to $250,000 for medical mal-

practice. The Hospital's policy provided coverage for "any employee of the named insured while acting within the scope of its duties as such."

The Northumberland County action instituted by Lena Derrick was settled for $250,000. Medical Protective, Yankosky's primary malpractice insurer, paid $100,000 of this amount and St. Paul, Yankosky's excess liability insurer, paid the remaining $150,000.

St. Paul has now sued Aetna, the Hospital's medical malpractice insurer, on the theory that Dr. Yankosky was an employee of the Hospital when the Derrick cause of action arose and thus St. Paul is entitled to reimbursement from Aetna of the $150,000 which it paid in settlement of the Derrick claim. Aetna maintains that Dr. Yankosky was not an employee of the Hospital and that, consequently, the terms of its policy with the Hospital do not apply to her.

At the pre-trial conference, counsel for both parties agreed to submit the case on a case stated. The stipulation of facts filed is incorporated herein and, unless otherwise stated, all facts contained in this opinion are taken from the stipulation.

The sole issue is whether or not at the time of the incident in question Dr. Yankosky was an employee of the Sunbury Community Hospital. In order to resolve that issue, the first hurdle is the decision as to what standards to apply in order to determine Dr. Yankosky's relationship to the Hospital.

It is vitally important to note that the issue before the Court is *not* the liability of the Hospital for the action of Dr. Yankosky. Rather, the Court must determine the meaning of the word "employee" as used in the insurance contract between Aetna and the Hospital. It is possible for a Hospital to be liable for the actions of an individual who is not its employee as would occur where a hospital has cloaked an independent contractor with indicia of apparent authority to act on behalf of the hospital. Cf., for example, the "holding

out" doctrine as applied in Brown v. Moore, 247 F.2d 711, 719–720 (3d Cir. 1957). In such a situation, as stated in *Brown,* the individual would be deemed an employee of the hospital with respect to malpractice on patients but would be deemed an independent contractor in relation to the hospital itself. The sum of the foregoing is that in determining the meaning of the word "employee" in the Aetna-Hospital contract tests for agency which are based upon "holding out" concepts or upon "indicia of apparent authority" theories are inapplicable.

Notwithstanding the foregoing analysis, the Court is not of the view that all the standard tests for agency as commonly applied in *respondeat superior* situations should be disregarded in this case. Restatement of Agency 2d; See also Hader v. Coplay Cement Manufacturing Co., 410 Pa. 139, 150, 189 A.2d 771 (1963). The Court is unconvinced that the controlling Pennsylvania law is the doctrine which relies solely on a distinction between "medical" and "administrative" acts of individuals who are alleged to be employees of hospitals. See Brown v. Moore, *supra,* Footnote 4, 247 F.2d page 715 and Benedict v. Bondi, 384 Pa. 574, 580–581, 122 A.2d 209 (1956). The *Benedict* case, cited in footnote 4 of the *Brown* opinion, involves the liability of an operating surgeon for the acts of an attending nurse. In attempting to assess the doctor's liability, consideration was given to whether the nurse's activities were "medical" or "administrative". While *Benedict* relies on the "medical-administrative" distinction, this Court has found no Pennsylvania case which applies that test to a relationship between a doctor and a hospital. Furthermore, that test deals with the potential liability in tort of a principal for the actions of an alleged agent. For reasons discussed above, it has no application to the issue before the Court which deals with the interpretation of a word in an insurance policy.

Since an individual's status as an employee of a hospital should not change from time to time based upon the particular activity in which that individual is engaged (unless, of course, the individual has two distinct relationships with the hospital), the "medical-administrative" distinction, which would vary that relationship from time to time according to the individual's activities, is similar in nature to the "holding out" doctrine which the Court has already indicated is not applicable to this case. Consequently, the Court will reject Aetna's contention that that test should be used here to the exclusion of *all* other standards for assessing agency. Instead the Court will rely on those standards for agency which shed light on the question of Dr. Yankosky's status with respect to the hospital.

■ In presenting this case to the Court for decision instead of to a jury, the parties have done nothing to affect the burden of proof which obtains. It is St. Paul's burden to convince the Court by a preponderance of the evidence that Dr. Yankosky was an "employee" of the Sunbury Community Hospital at the time of the incident in question as that term is used in the Aetna–Hospital policy.

■ The minimal extent of control exercised by the Hospital over the details of Dr. Yankosky's work is not viewed as convincing one way or the other. See Restatement of Agency, 2d § 220(2)(a). Since hospital administrators are unqualified to direct a highly trained radiologist's work, a dearth of control by them is not dispositive of the issue with respect to Dr. Yankosky's status. Not every employer is competent to supervise the details of the work of highly skilled individuals whom he has hired. Nevertheless, those persons remain his employees. Thus, the Hospital's lack of control over Dr. Yankosky's performance of her duties, while certainly helpful to Aetna's position, does not foreclose further consideration of other factors bearing on Dr. Yankosky's relationship to the Hospital. On this point, Aetna relies on Levin v. Wear Ever Aluminum, 442 F.2d 1307, 1308 (3d Cir. 1971), citing Green v. Independent Oil Company, 414 Pa. 477, 483–484, 201 A.

2d 207 (1964). Although *Levin* is strong precedent for a finding on this issue which comports with the Court's ultimate holding in this case, the fact that neither *Levin* nor *Green* involved the particular factual situation which is before this Court renders it advisable to make further inquiry into this issue. The Court also notes that the test promulgated by *Green* and adopted in *Levin* which relies on the alleged employer's "right to control" somewhat begs the ultimate question and for this reason is not of great help in disposing of this case.

 The Memorandum of Agreement between Dr. Yankosky and the Hospital entered into on October 19, 1967, contains no indication that the parties viewed the relationship as one of employer-employee. Rather, in my view, it contains contrary implications. Cf. Restatement of Agency 2d, § 220(2)(i). Although the Memorandum does set approximate hours for Dr. Yankosky's work, her schedule which was quite flexible and variable, was more like that of an independent contractor than like that of an employee. Thus, the substance of the Memorandum, at best, adds no support to St. Paul's contention that Dr. Yankosky was an employee of the Hospital but rather, in the Court's view, detracts from that position.

A significant factor which further impairs St. Paul's case is the fact that Dr. Yankosky received no fringe benefits through the Hospital and the Hospital did not withhold any federal, state, or local taxes or deduct any Social Security contributions from the amounts paid to Dr. Yankosky. This is particularly convincing evidence that the doctor and the Hospital themselves viewed the arrangement as one of an independent contractor. Restatement of Agency 2d § 220(2)(a).

In addition to the lack of payroll deductions and fringe benefits there is other evidence that the Hospital did not view Dr. Yankosky as an employee. In compiling a list of employees for its Workmen's Compensation carrier, the Hospital did not refer to employees by name. Nevertheless, it is agreed that in arriving at the numbers which appeared on the list the Hospital did not count Dr. Yankosky. Nor was she listed on the Employee Earnings Records of the Hospital. Also, the personnel in the X-ray department at the Hospital were employed and paid as salaried employees while only Dr. Yankosky was retained through the special mechanism of a Memorandum of Agreement containing a mode of payment which differed from a straight salary. Cf. Restatement of Agency 2d § 220(2((g). She was paid a percentage of gross X-ray bills, not X-ray receipts, with a basic annual dollar guarantee.

Another factor is Dr. Yankosky's occupation. St. Paul has failed to convince the Court that in the Sunbury area radiology is viewed as work normally done by employees rather than as work usually done by a specialist without supervision, i. e. an independent contractor. Restatement of Agency 2d, § 220(2)(b), (c), and (d).

The Court is aware that the matter before it is not open-and-shut and that there are factors of some weight which are favorable to St. Paul's position. The most significant of these is the Hospital's provision of equipment and office space to Dr. Yankosky. See Restatement of Agency 2d, § 220(2)(e). However, this circumstance is somewhat vitiated by the fact that the arrangement between the Hospital and Dr. Yankosky was designed, at least in part, to meet the requirement of the Joint Commission on Accreditation of Hospital Standards that radiological service be provided. Other factors cited by St. Paul, such as the length of the arrangement and the fact that the Hospital considered the engagement of Dr. Yankosky in a meeting of the "Personnel Committee" are not considered sufficient to shift the preponderance of the evidence in its favor. The mere existence of those matters is not enough to carry St. Paul's burden of proof in light of the countervailing considerations which ex-

ist here. No decision on this matter can be made free of indicia which run counter to it. The question is close and has the aura of a textbook situation where burden of proof is the decisive factor in the outcome. In my opinion, if there is a preponderance of the evidence at all in this case, it is in favor of Aetna. After a careful consideration of the facts before it, the Court is not convinced by a preponderance of the evidence that Dr. Yankosky was an employee of the Sunbury Community Hospital at the time when the Derrick cause of action arose, within the meaning of the word "employee" in the insurance contract.

Aetna has objected to the admissibility of exhibits P–6, P–7, P–8, and P–9 which are Memoranda of Agreement entered into by the Hospital and Dr. Yankosky at times subsequent to the incident in question. Because of the dates upon which they were completed these memoranda do not bear on the issue before the Court and Aetna's objection to their admissibility is sustained.

An appropriate order in favor of Aetna will be entered.