**Nicholas KARAS, Administrator of the Estate of Voula Karas, Deceased, and Nicholas Karas in his own right**

v.

**Dr. Laird G. JACKSON, et al.**

**Civ. A. No. 81–4727.**

United States District Court,
E.D. Pennsylvania.

Dec. 28, 1983.

Avram G. Adler, Adler & Kops, Philadelphia, Pa., for plaintiff.

A. Grant Sprecher, Ruth Rudbarg Wessel, Obermayer, Rebmann, Maxwell & Hippel, Adrian R. King, Post & Schell, Jay J. Lambert, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff filed this medical malpractice action seeking to recover damages in connection with the death of his wife, Voula Karas. Plaintiff contends that Mrs. Karas' death resulted from the defendants' negligence during the performance of an amniocentesis procedure at Thomas Jefferson University Hospital, and from the defendants' failure to warn Mrs. Karas of the risks associated with such a procedure. With regard to one of the defendants, Dr. Laird G. Jackson, plaintiff claims that Dr. Jackson failed to inform Mrs. Karas of the dangers inherent in the amniocentesis procedure, failed to perform the amniocentesis in a proper and safe manner, and failed to exercise due care. In addition, plaintiff asserts that Dr. Jackson played a part in inviting patients to undergo an amniocentesis and thus should have taken steps to minimize the risk of the procedure. Dr. Jackson has moved for summary judgment. Because the facts stated in his uncontroverted affidavit establish that he was not involved either personally or vicariously in advising or performing the amniocentesis

in question, summary judgment will be granted in favor of Dr. Jackson.

■ It is axiomatic that a party moving for summary judgment has the burden of proving that no genuine issues of material fact exist. *DeLong Corp. v. Raymond International, Inc.*, 622 F.2d 1135, 1139 (3d Cir.1980). To this end, Dr. Jackson has submitted an affidavit stating facts in support of his motion. Federal Rule of Civil Procedure 56(e) makes it clear that the party opposing a summary judgment motion must respond to a properly supported motion by supplementing the record with affidavits or otherwise demonstrate the existence of a genuinely disputed factual issue. Fed.R.Civ.P. 56(e); *Fireman's Fund Insurance Co. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir.1982); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981). Plaintiff may not rest his response to a summary judgment motion on the bare allegations in his pleadings. *Id.* In the present case, however, plaintiff has failed to respond to Dr. Jackson's affidavit by supplementing the record pursuant to Rule 56(e).[1] As a consequence, the facts stated in Dr. Jackson's affidavit must be considered undisputed.

■ Dr. Jackson's affidavit states that he is presently and was at all times relevant to this action the director of the Division of Medical Genetics at Thomas Jefferson University Hospital. Dr. Jackson never acted as Mrs. Karas' physician, never saw Mrs. Karas, and never advised her concerning any medical treatment or procedure. Dr. Jackson did not perform an amniocentesis on Mrs. Karas, and he was not present when the amniocentesis in question was performed. Dr. Jackson states that hospital records name Dr. Ronald Wapner as the physician who performed the amniocentesis on Mrs. Karas. Dr. Wapner was not subject to Dr. Jackson's instructions, directions or control concerning the manner of performing the amniocentesis, and Dr. Jackson never offered any advice concerning the performance of the procedure. Dr. Wapner also receives no evaluation, supervision or compensation from Dr. Jackson.

Dr. Jackson's affidavit thus establishes that he could not have acted negligently during the performance of the amniocentesis in question. Dr. Jackson neither personally performed the amniocentesis on Mrs. Karas nor was he ever present at any time during the procedure. Dr. Jackson, therefore, is not liable for negligence on his part in connection with the amniocentesis performed on Mrs. Karas.

■ In addition, Dr. Jackson is not vicariously liable for any negligence on the part of others in connection with the amniocentesis performed on Mrs. Karas. Vicarious liability under the doctrine of responde-at superior requires the existence of an agency relationship between the person who acted negligently and the person sought to be held responsible. *Mazer v. Lipschutz*, 327 F.2d 42, 53 (3d Cir.1964). Under Pennsylvania law, the essential considerations in determining the existence of an agency relationship are "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control

---

1. Plaintiff has not officially filed a response to Dr. Jackson's motion with the clerk of the court. Rather, plaintiff hand delivered an answer to chambers. This answer includes neither an affidavit substantiating its conclusory allegations nor a supporting memorandum of law. As a response to Dr. Jackson's motion, therefore, plaintiff's answer is deficient under both Federal Rule 56(e) and Local Rule 20(c). Plaintiff's answer, however, does aver that material facts will be tested by deposing Dr. Jackson. In addition, plaintiff's proposed order seeks a continuance pursuant to Federal Rule 56(f) to permit affidavits to be obtained and depositions to be taken. Such a continuance will not be granted.

First, Rule 56(f) requires on its face that the party seeking a continuance show in his affidavit submitted in opposition to the summary judgment motion the reasons why he cannot present facts essential to justifying his opposition. As stated above, no affidavit of any type has been submitted by the plaintiff. Second, the discovery period set by this court ended in October, 1982. During the time set for discovery, and subsequently for over a year, plaintiff's counsel has had ample opportunity to depose Dr. Jackson and apparently has made little or no effort to do so. A further delay at this time would only serve to prejudice Dr. Jackson.

of the undertaking." *Scott v. Purcell,* 490 Pa. 109, 117, 415 A.2d 56, 60 (1980) (quoting Restatement (Second) of Agency § 1, comment b (1958)). In the present case, there is no indication of any manifestation that the physicians or attendants who were present during the amniocentesis in question acted on Dr. Jackson's behalf, or that Dr. Jackson exercised any control over them. Dr. Jackson's affidavit clearly establishes the contrary. The physicians and attendants did not personally confer a benefit on Dr. Jackson by performing the amniocentesis procedure, nor did they receive compensation or direction from him.

▪ In medical malpractice actions, Pennsylvania has expanded the traditional notion of the agency relationship with the "captain of the ship" doctrine, articulated in *McConnell v. Williams,* 361 Pa. 355, 65 A.2d 243 (1949).[2] The captain of the ship doctrine holds responsible the surgeon in charge of an operative procedure for the negligence of persons who assist him during the course of performing the operation, even if those persons also are employees of the hospital where the operation is performed. *See Thomas v. Hutchinson,* 442 Pa. 118, 124–25, 275 A.2d 23, 26–27 (1971); *Collins v. Hand,* 431 Pa. 378, 391–93, 246 A.2d 398, 405–06 (1968); *Yorston v. Pennell,* 397 Pa. 28, 39, 153 A.2d 255, 259–60 (1959); *Grubb v. Albert Einstein Medical Center,* 255 Pa.Super. 381, 395, 387 A.2d 480, 487 (1978). Vicarious liability under the captain of the ship doctrine attaches only if the physician in question has the right to exercise control over the work to be done and the manner of performance. *Collins,* 431 Pa. at 394, 246 A.2d at 406. The mere right to supervise, even as to the work and the manner of performance, is not sufficient to create an agency relationship or to extend captain of the ship liability. *Yorston,* 397 Pa. at 39, 153 A.2d at 260.

▪ In the present case, it cannot be said that Dr. Jackson at any time exercised or possessed a right of control over the amniocentesis performed on Mrs. Karas or the manner of its performance. Mrs. Karas was not Dr. Jackson's patient. Dr. Jackson did not personally see Mrs. Karas or recommend the amniocentesis procedure to her. Dr. Jackson was not in charge of the operation and he did not employ or direct the physicians and attendants who performed the amniocentesis. Even if Dr. Jackson played a role in establishing general guidelines for the recommendation or performance of the amniocentesis procedure, the most that can be inferred from the facts on the record was that his role in this case was merely as director of the division of Medical Genetics. Dr. Jackson, therefore, is not vicariously liable under either the captain of the ship doctrine or a general theory of respondeat superior.

▪ Finally, Dr. Jackson cannot be held responsible for the failure to warn of any risks associated with the amniocentesis on the part of persons in the Department of Medical Genetics or the physician who performed the procedure. In *Pennsylvania,* "a surgeon who treats an individual without that person's consent commits a technical battery and is responsible for the consequences of the tort." *Salis v. United States,* 522 F.Supp. 989, 997 (M.D.Pa.1981). *See Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966). Because Pennsylvania treats the lack of informed consent as a

---

**2.** It has been suggested that the captain of the ship doctrine is no longer a viable theory of vicarious liability under Pennsylvania law. *Grubb v. Albert Einstein Medical Center,* 255 Pa.Super. 381, 402, 387 A.2d 480, 491 (1978) (Hoffman & Price, JJ., concurring). *See Thomas v. Hutchinson,* 442 Pa. 118, 126, 275 A.2d 23, 27 (1971). The captain of the ship doctrine developed prior to the Pennsylvania Supreme Court's decision in *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965), which eliminated the immunity from tort liability previously recognized in favor of public hospitals. It is arguable, at least, that Pennsylvania need not extend the limits of agency law and hold physicians vicariously liable by employing the captain of the ship doctrine to redress injured patients now that hospitals are vicariously liable for the torts of their employees. *See Hutchinson,* 442 Pa. at 126, 275 A.2d at 27. The Pennsylvania Supreme Court, however, has yet to abandon officially the captain of the ship doctrine, so this court will address its applicability to the present case.

technical battery, the duty to warn and obtain consent appears to be on the physician who actually performs the operation, and thus commits the offensive contact. This rationale would not support an affirmative duty to warn on the part of other physicians or counsellors who may be in a position to inform a patient prior to an operation, but fail to do so. Because Dr. Jackson neither performed the amniocentesis nor was in control of its performance, he cannot be held liable for not personally counselling Mrs. Karas or for not properly supervising the persons who did counsel her.

There being no basis for holding Dr. Jackson individually or vicariously liable for the death of Mrs. Karas, Dr. Jackson's motion for summary judgment will be granted.