## Cousins v. Sharon City School District

*John A. Miller,* for plaintiffs.
*Nancy M. Sennett,* for defendant.

WHERRY, *J.,* July 20, 1994—This matter is currently before the court on defendant's[1] motion for summary judgment. Following excellent briefing of the issues by counsel, oral argument of equal quality was had. At this argument, counsel for defendant requested and received permission to submit supplemental material for the court's consideration. Plaintiff's counsel was given an opportunity to respond in kind and availed himself of it. With all of this material now submitted, this opinion, and the order which follows, shall dispose

---

1. Although both Sharon City Public Schools and the School District of the City of Sharon are listed as separate defendants in this action, counsel for the defense has informed the court that it would be more accurate to refer to a single defendant, that being the Sharon City School District. (Brief of defendant at 1.) Indeed, there is also a motion to correct name of party, filed contemporaneously with the motion for summary judgment, which is pending before the court.

of this motion and explain the reasoning behind the court's decision.

Insofar as the facts and law are closely interwoven in a motion for summary judgment, a fairly thorough review of the facts surrounding this case is in order. It is well known that, in considering a motion for summary judgment, the trial court must review the record in the light most favorable to the non-moving party. *DeWeese v. Anchor Hocking Consumer and Industrial Products Group,* 427 Pa. Super. 47, 628 A.2d 421 (1993). Accordingly, the factual recitation in this opinion shall reflect as favorably upon the plaintiffs' submission of the facts as the pleadings allow.

I.

This case arose from a slip and fall accident that occurred in the adjoining parking lot area of Sharon High School and Sharon Elementary School in Sharon, Mercer County, Pennsylvania. Plaintiff[2] was attending a wrestling tournament at Sharon High School on April 8, 1988, and the automobile she arrived in was parked in the parking lot of Sharon Elementary School at approximately 5 p.m. The elementary school lot directly adjoins the lot of the high school, with the high school itself on the other side of its parking lot going away from the elementary lot. When plaintiff entered the high school, it was raining or misting, and the parking lot was wet.

At approximately 9:15 p.m., plaintiff left the tournament accompanied by her son and daughter. Plaintiff intended to drive home in her husband's van, which

---

2. Although there are two plaintiffs named in this suit, use of the term "plaintiff" shall be to Cathy I. Cousins unless otherwise specified.

was also parked in the elementary school lot. In walking back towards the lot, plaintiff and her children traversed the same path plaintiff had taken going into the high school. This involved leaving the gymnasium and walking across the high school parking lot to the point where a fenced divider separates the high school and elementary parking lots.

At some point along the fence, there was an open gate. The high school parking lot sits at a slightly higher elevation than does the elementary lot, and this is apparent where the two lots meet at the fence. On the ground where the gate is, there is an irregular hump of varying elevations and slopes which is composed of various paving materials, apparently placed there in some effort to "bridge" the two lots. The temperature had dropped five to 10 degrees and the rain or mist had turned to snow by the time plaintiff and her children approached, and the hump at the gateway was covered with a light dusting of snow. Plaintiff slipped at one point while traversing the high school parking lot, but she did not fall and proceeded onward. Plaintiff declined an offer of assistance from her son at that point, recognizing that his stride was different than hers and reasoning that if he slipped, he might pull her down with him.

When they came to the gateway and its hump, plaintiff and her children sought to cross over the hump onto the elementary school lot. Plaintiff grabbed a low masonry wall with one hand and a pole attached to the fence with the other. She then stepped on the hump with her left foot and slowly stepped down on the hump with her right foot. As plaintiff transferred her weight onto her right foot, that foot slipped and her legs went up in the air. She fell quickly to the ground, striking her head very hard upon the hump itself.

As a result of this fall, plaintiff allegedly suffered numerous injuries for which she has received medical treatment. Most significant among these is an ongoing form of epilepsy manifesting itself in grand mal seizures. Plaintiff has also experienced some loss of memory and cognitive ability which is allegedly related to the head injuries she sustained in the fall. In addition, plaintiff is taking medication to control her seizures and for pain associated with chronic headaches which persist to this day. This medication, either alone or in conjunction with her injuries, may also have contributed to the memory problems plaintiff has experienced.

## II.

Plaintiff contends that defendant was negligent in a number of ways which were substantial factors in causing her injuries. Specifically, plaintiff's complaint[3] avers, among other things, that defendant was negligent in failing to remove the hump, in failing to warn about or illuminate the hump, in failing to take measures to keep the hump free of snow and ice, and in failing to discover and/or eliminate the condition caused by snow and ice accumulation on the hump. (Amended complaint at paragraph 18.)[4]

Defendant's answer and new matter denies any negligence and raises the defenses of assumption of the risk, comparative negligence, governmental immunity, and other defenses. Following discovery, defendant filed the instant motion, reasserting its immunity from suit pursuant to the Local Government Immunity Act. The

---

3. Any reference in this opinion to a complaint will be to the amended complaint which was filed in this action.

4. The averments are set forth with greater specificity in the lettered subparagraphs of paragraph 18.

basis for this position is that plaintiff's claim was based on the slippery conditions and that defendant was not responsible for a surface which was merely slippery. Alternatively, defendant reiterates, recovery is barred because plaintiff assumed the risk of injury by continuing to walk through the parking lot even though she knew it was slippery by virtue of her initial slip.

Plaintiff's response to defendant's motion first asserts that an exception to the Local Government Immunity Act applies, specifically the "real property" exception. Under this exception, plaintiff contends, liability may lie against defendant for the negligent maintenance of real property under its care, custody or control, that property being the hump between the schools' parking lots. Plaintiff also denies assumption of risk, contending that there was no other path to her car she could have taken which was safer.

In support of her opposition to defendant's motion, plaintiff submitted her own affidavit and that of her daughter, Michelle Cousins, along with an expert report from Dr. Irving J. Oppenheim, a professional engineer. The substance of the affidavits relates certain of the facts which have been summarized above. The purpose of submitting these affidavits appears to be to correct or clarify certain testimony given by plaintiff during her deposition.[5] The engineering expert was proffered to help establish the theory that the hump at the gateway

5. Defendant contends that this is improper, and has sought to strike the affidavits insofar as the deposition of plaintiff constitutes a pleading which may not be contradicted or rescinded later on by affidavit. Plaintiff's response, which shall be dealt with in greater detail later in this opinion, contends that her memory at the deposition may have been somewhat unsure due to her condition, her medication, or both, and that these uncertainties have been remedied prior to swearing out her affidavit.

would have posed a danger and likelihood of a fall even had conditions not been wet or snowy. The report stated in essence that the hump was so irregular and of such severe grades that it was an inherent hazard which defendant could and should have remedied in one or more ways.

Defendant in response filed a motion to strike affidavits.[6] In its motion, defendant contends that the affidavits submitted are an improper means of rebutting summary judgment in this instance because plaintiff's deposition is a pleading which cannot be rescinded or modified via affidavit. Plaintiff responded to the motion to strike by stating that a deposition is not a pleading and hence there is no improper rebuttal. Also, plaintiff contends that she is merely clarifying matters in her deposition, matters which she admitted at the time of deposition might be unclear due to her injuries and/or medication.

### III.

The standards for evaluating a motion for summary judgment stem from the Pennsylvania Rules of Civil Procedure. Pa.R.C.P. 1035. In evaluating a case for summary judgment, a court must view the record in a light most favorable to the non-moving party, with all doubts as to the existence of material fact being resolved against the moving party. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992). The ultimate issue in deciding a motion for summary judgment is whether the evidence available, examined most favorably to the non-moving party, in-

---

6. Defendant was given permission by the court at the oral argument of the motion for summary judgment to submit a supplemental brief in support of a motion to strike affidavits.

dicates whether a prima facie case exists. *Johnson v. Harris,* 419 Pa. Super. 541, 615 A.2d 771 (1992). Once a motion for summary judgment has been made and properly supported by the moving party, it is then incumbent upon the non-moving party to demonstrate by interrogatories, admissions, or affidavits that a genuine issue of material fact exists for trial. *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991).

In examining defendant's motion, the initial question to evaluate pursuant to the standards set forth is the applicability of the Local Government Immunity Act. 42 Pa.C.S. §8541. Under the Act, local agenices[7] are generally immune from suit for damages deriving from personal injuries. *Id.* Nonetheless, a local agency may be liable for personal injury damages if a cause of action would otherwise exist against a person not having an immunity defense available, the actions of the agency or its agents or employees caused the injury, and one of eight enumerated exceptions to the immunity applied. 42 Pa.C.S. §8542.

Plaintiff in this case contends that there is no immunity available to defendant in this case due to the "real property" exception. This exception is defined as follows:

"(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: ...

---

7. There appears to be no dispute between the parties that defendant is a local agency for the purposes of the Act. Indeed, local agency immunity has been found to apply to school districts in personal injury litigation in the past. See *Close v. Voorhees,* 67 Pa. Commw. 205, 446 A.2d 728 (1982); *Wimbish v. School District of Penn Hills,* 59 Pa. Commw. 620, 430 A.2d 710 (1981).

"(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency." 42 Pa.C.S. §8542(b)(3).

Clearly the parking lot areas in their entirety constitute real property, and there is no dispute as to defendant's ownership and control over it.

It has been held that the "duty of care a Commonwealth agency owes to those using its real estate is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used, or reasonably foreseen to be used." *Bendas v. Township of White Deer,* 531 Pa. 180, 183, 611 A.2d 1184, 1186 (1992) (quoting *Snyder v. Harmon,* 522 Pa. 424, 435, 562 A.2d 307, 312 (1989)). Should that duty be breached and the land contain a defect, damages may only be recovered if the defect itself causes injury. The exception will not apply if the defect simply facilitates or exacerbates an act of another party who falls outside the exception. *Norwin School District v. Cortazzo,* 155 Pa. Commw. 432, 625 A.2d 183 (1993).

There can be no real question that plaintiff, at the time of her fall, was on defendant's premises as an invitee. She was attending a wrestling tournament held at the high school and was parked in one of the parking lots along with others attending the event. Plaintiff therefore is not precluded from recovery by reason of unlawful trespass. 42 Pa.C.S. §8542(b)(3). Therefore, the critical question to be answered is, "could the real estate at issue, namely the hump at the gateway, have caused plaintiff's injury without any facilitating factors?"

Defendant contends that plaintiff's pleadings and deposition preclude an affirmative answer. At all times

relevant, defendant submits that plaintiff claimed she slipped and fell on the ice and/or snow that had recently fallen. Since defendant has no obligation to keep its lots free of a light, natural snowfall, defendant reasons that immunity will apply for two reasons. First, since there was no duty to begin with, there can be no breach of duty. Secondly, the existence of snow and ice does not constitute a defect in real estate which would warrant the exception enumerated in the statute.

Defendant's contention misses a significant point. The foundation of its motion is the assumption that plaintiff is alleging her fall was caused by the slippery condition of the hump due to ice and snow *only*. The ice and snow certainly were mentioned, and prominently, in plaintiff's pleadings. However, the ice and snow did not stand alone. Much was made of the condition of the hump itself in the complaint. In averring the particulars of defendant's alleged negligence, plaintiff included the following:

"(b) In failing to warn or give notice of the dangerous condition which existed in the area of the hump;

"(c) In failing to remove the hump;

"(d) In failing to install, construct and erect handrails adjacent to and in the area of the hump for use by pedestrians in traveling it;

"(e) In failing to properly illuminate the parking lot areas of the premises and, in particular, the gateway between these parking lots where the hump existed; ...

"(g) In failing to paint or otherwise mark the hump in such a way as to call the attention of pedestrians traversing it to its existence; ...

"(j) In failing to provide adequate and appropriate drainage in the area where plaintiff Cathy I. Cousins fell;

"(k) In constructing the hump in the area of the gateway between the parking lots of the premises in an area over which pedestrians were to travel between the parking areas;

"(l) In failing to place a roof or other covering over the hump to prevent the accumulation of rain, ice and snow on it;

"(m) In failing to place hot water pipes or other devices within or under the hump for the purpose of heating it to prevent the accumulation of ice and snow upon it; and,

"(n) In failing to provide a flat, level means of ingress and egress between the parking lot areas of the premises." (Amended complaint at paragraph 18.)

The only subparagraphs not recited here, those having anything to do with ice and snow, numbered four out of 14. It is clear from that majority of the subparagraphs cited above that plaintiff is alleging the condition of the hump was a cause of her fall. Indeed, the opinion of plaintiff's engineering expert, Dr. Oppenheim, suggests that the hump would be hazardous "under any conditions, including *dry* conditions...." (Expert report of Irving J. Oppenheim at 4.) (emphasis added)

Defendant, in its supplemental motion to quash affidavits, suggests that plaintiff also restricted herself through her subsequent testimony to the position that the ice and snow covering the hump made her fall. Specifically, defendant points to portions of plaintiff's deposition as well as paragraph 16 of the amended complaint. Paragraph 16 avers:

"On April 8, 1988, at approximately 9:15 p.m., plaintiff Cathy I. Cousins exited the Sharon High School building, walked across the Sharon High School parking lot and was walking from the Sharon High School park-

ing lot through the gateway between it and the Sharon Elementary School parking lot where she had parked her van in order to leave the premises when she stepped upon the large, lumpy, irregular hump, which was covered with ice and freezing rain causing her to slip and fall, thereby sustaining severe and permanent personal injuries." (Supplemental brief of defendant at 2.) (citing amended complaint, paragraph 16.)

While it is true that the words "covered with ice and freezing rain" immediately preceded "causing her to slip and fall" in this particular paragraph, the complaint must be read as a whole. This paragraph, in conjunction with the subparagraphs in paragraph 18, potentially makes out a theory of recovery which finds fault with the hump itself, with or without snow and ice. Indeed, the contents of this particular paragraph could be construed as indicating that the "large, lumpy, irregular" condition of the hump combined with "ice and freezing rain" caused plaintiff's fall. This is borne out by subparagraphs 1 and m of paragraph 18, set out above, which suggest that the hump, because of its irregular construction, should be shielded or protected in some way from the elements. This position is also set forth in Dr. Oppenheim's expert report. (Expert report of Irving J. Oppenheim at 4.)

With respect to the statements contained in plaintiff's deposition that she "slipped and fell on the ice covering the hump" or words to that effect, this is not necessarily dispositive of the issue. Defendant submits that plaintiff's deposition statements are judicial admissions that the snow and ice caused the fall, and that these admissions cannot be retracted or modified by subsequent affidavit. Plaintiff attacks this position on two grounds. First, plaintiff contends that the deposition statements are not judicial admissions. Secondly, plaintiff insists

that the statements are not contradictory, and that any appearance thereof is due to the memory problems she was having at the time her deposition was taken.

Judicial admissions are admissions which are made in pleadings, stipulations, etc., which do not have to be proved in the same litigation. *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3rd Cir. 1956). More specifically, judicial admissions are express waivers made in court or in preparation for trial by a party in order to concede for trial purposes the truth of the admission. It has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted, so that the opposing party need offer no evidence to prove it and the party by whom the statement was made is not allowed to disprove it. *Jewelcor Jewelers & Distributors Inc. v. Corr,* 373 Pa. Super. 536, 542, 542 A.2d 72, 75 (1988). Of significance in the instant case, "[a] principal element of a judicial admission is that the fact has been admitted *for the advantage of the admitting party,* and consequently, a judicial admission cannot be subsequently contradicted by the party that made it." *Nasim v. Shamrock Welding Supply Co.,* 387 Pa. Super. 225, 228, 563 A.2d 1266, 1267 (1989). (emphasis added)

A judicial admission need not be strictly a pleading; more important than the form is the intent of the party making it, as set forth *supra. Nasim, supra* at 229, 563 A.2d at 1268. Depositions, however, are sworn testimony of a deponent. Any statement constituting a judicial admission would have to be explicit and unequivocal by the deponent. In several instances, statements made by party deponents which appear dispositive of all or part of the ultimate issue in a case have been held *not* to constitute judicial admissions. See *Videon Chevrolet Inc. v. General Motors Corp.,* 992 F.2d 482 (3rd Cir. 1993); *Thomas v. Hutchinson,* 442 Pa. 118,

275 A.2d 23 (1971). Such material may be utilized at trial as either substantive evidence or to impeach the deponent. Nonetheless, it is not binding, and is instead a matter for a finder of fact to evaluate the weight the deposition statements should be given. *Videon Chevrolet, supra* 992 F.2d at 488 n.5.

In the instant case, plaintiff's deposition statements concerning ice and snow being the cause of her fall are somewhat limited. They were almost never made without some reference to the hump at the same time. Clearly there was no intention to admit for trial that the ice and snow was solely responsible for the fall and that the hump was in no way responsible—to suggest that there was would obviate the need for plaintiff's extensive averments and discovery about the condition of the hump itself. Such a suggestion flies in the face of common sense and falls well short of the standard that must be met for a motion for summary judgment. It certainly would not be made for the benefit of plaintiff at trial. Accordingly, these statements do not constitute judicial admissions, and defendant's motion to quash affidavits based upon this premise will be denied.[8]

## IV.

Defendant's motion for summary judgment also contends that plaintiff assumed the risk of falling by taking

---

8. Lest there be any question concerning the propriety of utilizing the expert report provided by Dr. Oppenheim, this was filed as a supplemental answer to defendant's interrogatory no. 3, which presumably inquired about experts plaintiffs might call at trial and their opinions. Consideration of this report in deciding a summary judgment motion, therefore, is entirely proper since "any party may move for summary judgment on the pleadings and any depositions, *answers to interrogatories,* admissions on file and supporting affidavits." Pa.R.C.P. 1035(a). (emphasis added)

the route she did over a condition (the icy hump) she knew to be hazardous. As plaintiff correctly points out, defendant's contention can best be described as what has been termed the "alternate ways" or "choice of ways" doctrine. Simply put, this doctrine states: "Where a person, having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover." *Downing v. Shaffer,* 246 Pa. Super. 512, 518, 371 A.2d 953, 956 (1977). (citations omitted) In order for the choice of ways doctrine to be applicable:

"[T]here must be evidence that the plaintiff made an unreasonable decision which exposed him to a hazard that he knew or should have known existed. There must be evidence of (1) a safe course, (2) a dangerous course, and (3) facts which would put a reasonable person on notice of the danger or actual knowledge of the danger." *Id.* at 519, 371 A.2d at 956.

Very rarely is choice of ways an issue which is dealt with at summary judgment. The cases which have examined it have generally been at the post-trial stage. Even in those cases, however, "Pennsylvania courts have generally been loath to apply the alternate ways doctrine.... [I]n those very few cases where the doctrine has been applied to find that the plaintiff was contributorily negligent, the danger the plaintiff chose to confront was indisputably obvious." *O'Brien v. Martin,* 432 Pa. Super. 323, 328, 638 A.2d 247, 249 (1994).

In the instant case, defendant is contending that plaintiff's deposition reveals she knew another way back to her vehicle which would have avoided the gateway and hump and nonetheless chose to traverse the hump. This is true to an extent. In response to questioning by defendant's counsel, plaintiff did describe one and

possibly two other routes she could have taken to get to her vehicle. (Deposition of plaintiff at 111-112.) However, just simply admitting that there was another route that could have been taken does not mean that it was safe and the one taken was not. Furthermore, plaintiff also testified in her deposition that she had traversed the same path as she took on the night in question several times previously without adverse incident. (Deposition of plaintiff at 51-52.) This fact might just as well indicate a basis for a belief by plaintiff that the path she chose was safe.

Given the circumstances described above, it would appear that none of the three requirements of the choice of ways doctrine have been satisfied. There is no real evidence concerning the real safety of any route; no evidence that any route was clearly unsafe; and no facts which would have given plaintiff clear warning of any danger on any given route she might have taken. Given the absence of anything resembling a satisfactory showing towards satisfying the choice of ways requirements, coupled with the general "loathing" of Pennsylvania courts to apply this doctrine, the assumption of risk portion of defendant's motion must also fail.[9]

## V.

To summarize briefly, it is clear from the pleadings and discovery that one or more jury questions exist, and that these questions go to the very heart of this

---

9. This by no means is meant to suggest that plaintiff is free of any substantial burdens in this regard. While assumption of the risk may not be applicable in this instance, there may very well be a question of comparative negligence present. Comparative negligence, however, is an issue for the finder of fact at trial and not one properly considered at the summary judgment stage.

case. Defendant's attempt to invoke the Local Government Immunity Act is misplaced because the exception for real property applies in this instance. Also, assumption of the risk, in the form of the choice of ways doctrine, is not applicable in this case. Plaintiff's affidavits and expert's report are not improper, and are properly considered for the purposes of summary judgment. Therefore, defendant's motion to quash affidavits must also be denied.

Given the high standard which must be met by the moving party prior to a motion for summary judgment being granted, it is clear that defendant's motion in its entirety must be denied.[10] An order will be entered accordingly.

## ORDER

And now, July 20, 1994, this matter being currently before the court on defendant's motion to quash affidavits, motion for summary judgment and motion to correct name of party, it is hereby ordered and decreed that defendant's motion to quash affidavits and motion for summary judgment are denied based upon the analysis in the accompanying opinion.

It is further ordered that defendant's motion to correct name of party is granted. Defendant shall now and hereafter be listed as "Sharon City School District" in any caption or reference to this case.

---

10. Defendant's motion to correct name of party, pursuant to Pa.R.C.P. 1033. which was filed with the motion for summary judgment, shall be granted in the order accompanying this opinion. Defendant shall, now and hereafter, be listed as "Sharon City School District" in any caption or reference to this case.